## STUYVESANT *v.* HONE and others.

A mortgagee whose lien was upon several lots of land, which subsequently to his mortgage, were conveyed to various purchasers, released a part of the lots from his mortgage, without any notice of such conveyances, either actual or constructive.

*Held,* that the lots not released, were subject to the whole amount of the mortgage.

A tract of land was mortgaged to S. H. subsequently acquired a lien thereon, which was known to S. H. proceeded in chancery to subject the tract to his lien, and obtained a decree, and the tract, which had been laid out into 56 building lots, was sold by a master to T. A part of the lots were mortgaged to H. by T., and the residue were discharged by the sale from H.'s claim. S. had no notice of the suit in chancery, or any of the subsequent proceedings. The conveyances and mortgages consequent on the sale, were duly recorded.

Afterwards H. foreclosed T.'s mortgage, in chancery, and at the outset, filed the notice of *lis pendens* prescribed by the statute. S. having no notice of this suit, released to T., during its pendency, 42 of the 56 lots. The 14 lots left subject to the mortgage of S. were a part of those which T. had mortgaged to H., and all of T.'s lots not mortgaged to H., were released by S.

*Held,* 1. That S. was not chargeable with constructive notice of the first chancery suit of H., or of the sale under his decree.

2. That the recording of the conveyances to T. and of T.'s mortgages, was not notice thereof to S.; and on releasing, S. was not bound to search the records for conveyances and incumbrances, subsequent to his own mortgage. And,

3. That neither the foreclosure suit of H., or the *lis pendens* filed, affected S. with notice of H.'s proceeding, or of his rights under T.'s mortgages.

Notice by the recording acts is not retrospective, so as to affect existing vested rights.

And the recording of a deed or mortgage, is not notice of its existence to a prior mortgagee.

It is the duty of a subsequent purchaser or incumbrancer to give to such mortgagee, actual notice of his rights, in order to affect the latter.

An incumbrancer on releasing from his lien, a part of the lands subject thereto, acquires no new interest in the residue. He is not a purchaser, and does not in this respect fall within the purview of the recording acts.

The constructive notice by a *lis pendens,* applies to those who derive their title to the subject matter from a party to the suit after it is commenced. It does not affect one who has a paramount title, superior to that of all the parties to the suit.

March 23; June 29, 1844.

THE bill was filed in September, 1839, by Catharine L. Stuyvesant, widow of Nicholas W. Stuyvesant, deceased, to foreclose a mortgage for $4,666 66, executed by Charles Henry Hall and his wife to N. W. S., dated September 28, 1824, and payable twenty years after its date, with annual interest on the first of May in each year. The lands mortgaged were situated in the city of New-York, and consisted of the whole of the block between the middle of Twelfth street on the south, the middle of Thirteenth street on the north, the middle of Avenue B on the west, and the middle of Avenue C on the east. The northeast portion of the land was at that time under the water of the East River. The mortgage was given for the purchase money of the property. It was accompanied by the bond of Mr. Hall ; and was recorded on the first day of October, 1824.

The mortgagee died March 11, 1833, leaving a will, and letters testamentary were issued to his two sons, Peter and Nicholas, and his two daughters, Catharine A. Catlin and Helen C. Dudley. Nicholas and Mrs. Dudley resigned their trust in August following.

Prior to 1837, the mortgaged premises had been laid out into fifty-six city lots, excluding the portion which was within the limits of the streets ; and on the 18th day of September, 1837, the acting executor and executrix of N. W. S. for a nominal consideration, released to William H. Thorne, the whole tract from the lien of the mortgage, *except the fourteen easterly lots*. The parcel remaining subject to the mortgage, extended from Twelfth to Thirteenth street on Avenue C, and 158 feet westerly from Avenue C. This release was recorded November 20, 1837.

On the first of June, 1838, the same executor and executrix of N. W. S., assigned the bond and mortgage to the complainant.

This was the case made by the complainant.

The executors and sundry of the heirs and devisees of John Hone deceased, put in an answer insisting that the release was fraudulent in respect of the easterly fourteen lots, which belonged to them ; and if otherwise, that by the release a proportion of the mortgage in the ratio of the released part, is paid, and the remaining lots are only chargeable with the balance.

The evidence introduced, established the following facts :

On the 15th of March, 1827, Charles Henry Hall and his wife conveyed the whole of the mortgaged premises to Thomas H. Smith in fee.

On the 2d of February, 1828, Smith, and his partner in trade, George W. Bruen, united in a conveyance of 240 lots of ground, including the mortgaged premises, to John Anthon, Esq. in fee. The deed was in trust to secure the payment of $100,000 to John Hone & Sons, who were parties of the third part therein, and it contained a power of sale on a default in the payment. This instrument was recorded as a deed, April 16th, 1828.

On the 8th of July ensuing, Smith conveyed all his real estate to Matthias Bruen.

N. W. Stuyvesant, the original mortgagee, on or about the 29th of May, 1829, filed a bill in chancery for the purpose of foreclosing his mortgage, in which the trust deed executed by Smith to Anthon, is set forth at large ; and Mr. Anthon, John Hone & Sons, and others were made parties. With the subpœna to answer, John Hone & Sons were served with a notice of the objects of the suit, which stated that they were made parties in order to foreclose their equity of redemption under the deed of trust, and the deed was described in the notice.

This suit appeared to have been discontinued or abandoned. The proceedings therein established that N. W. S., in May, 1839, if not before, had notice of the conveyance to Mr. Anthon.

On the 31st of May, 1836, Mr. Anthon, as trustee, filed a bill in this court against George W. Bruen and Matthias Bruen, for the purpose of subjecting the 240 lots conveyed to him by the trust deed to the payment of a judgment in favor of John Hone & Sons, against Smith and G. W. Bruen, which judgment included the indebtedness secured by the trust deed.

The executors of N. W. Stuyvesant were not parties to the suit of Anthon, and no notice of its pendency was filed in the office of the county clerk. A decree was made in the suit, directing a sale of the 240 lots ; and the same were sold accordingly, and all except two lots were purchased by William H. Thorne. The two lots were not a part of the block mortgaged

to Stuyvesant, and the whole of that block was conveyed to Thorne.

To secure the purchase money, Thorne executed two mortgages on the 1st of February, 1837. One for $123,423 64, payable in a year, with interest semi-annually, was executed to John Hone's executors. This mortgage included 104 lots, among which were *the 24 most easterly lots in the block mortgaged to N. W. Stuyvesant.* It was recorded February 28th, 1837.

The other mortgage of Thorne was executed to Mr. De Peyster, the master who made the sale, and included the residue of the block in question, together with the other lots purchased by him and not contained in the mortgage to the executors of Hone. The master assigned Thorne's mortgage, on the 13th of July, 1837, to George W. Bruen, as executor of Thomas H. Smith.

Thus, in 1837, Thorne owned the equity of redemption under Stuyvesant's mortgage, in the whole block of 56 lots, and had mortgaged the 24 lots on the east end of the block to Hone's executors, and the remaining 32 lots on the west part of the block to the master, who had assigned to G. W. Bruen as executor.

On or about the 19th day of August, 1837, the executors of Hone filed a bill in this court against Thorne, G. W. Bruen, and Mr. De Peyster, the master, to foreclose their mortgage on the 104 lots ; and a notice of the *lis pendens* was filed on the same day. The executors of Stuyvesant were not made parties to the suit.

It was prosecuted to a decree and a sale, and the whole 104 lots were bid in by the executors of Hone, and were conveyed to them on the 31st day of May, 1838, by the master who executed the decree.

The release of the 42 lots from Stuyvesant's mortgage, was executed while the last mentioned foreclosure was pending. It recites that it was made at the request of Thorne, who was the nominal owner of the equity of redemption in the whole block. The testimony in the cause proved that the release was executed at the request of George W. Bruen.

The 14 lots not released, were, after the master's sale in 1838,

allotted in the partition of John Hone's estate, to those of his heirs and devisees who were made defendants in this cause.

It appeared by the indorsements on the bond of C. H. Hall, that the interest on his bond and mortgage to N. W. S., was paid on the 1st of May, 1830, and in 1831 and 1832, by John Hone & Sons ; in 1833, 1834, 1835, and 1836, by John Hone's executors ; and in 1837 and 1838, by George W. Bruen.

*D. B. Tallmadge,* for the complainant.

*J. Anthon,* for the executors, &c., of John Hone.

*J. Prescott Hall,* for the assignee of Henry Hone.

THE ASSISTANT VICE-CHANCELLOR.—Where a mortgagee whose mortgage is a lien on several parcels of land, which were subsequently conveyed to different purchasers, releases from the lien of his mortgage, the parcel last conveyed, with-out any notice either actual or constructive, that the other parcels had been previously sold by the mortgagor ; he does not thereby discharge the parcels not released. (*Patty* v. *Pease,* 8 Paige's R. 277.) The right to have the lands which have been sold by the mortgagor charged in the inverse order of their alienation, is not a legal, but an equitable right, and is governed by the principles applicable to the relation of sureties. And the conscience of the mortgagee is not affected, unless he is inform-ed of the existence of the facts upon which this equitable right depends, or has sufficient notice of the probable existence of the right to make it his duty to inquire in order to ascertain whether it exists. (*Guion* v. *Knapp,* 6 Paige's R. 42–3, per Walworth, Chancellor.)

The same principle was held by Chancellor Kent in *Cheese-brough* v. *Millard,* (1 J. C. R. 414.) And see *Neimcewicz* v. *Gahn,* (3 Paige, 614 ; S. C. on appeal, 11 Wend. 312.)

To apply these principles to the case under consideration.

*First,* So far as Nicholas W. Stuyvesant, the first mortga-gee, or his executors, had *actual notice* of the rights and inte-rests of the parties, there was certainly nothing to prevent the

executors from releasing any portion of the mortgaged premises which they should deem proper.

In the first instance, the mortgagor owned the whole.

It appears by the proceedings in this court instituted by N. W. Stuyvesant in May, 1829, to foreclose his mortgage, that he had then been informed of the conveyance of the whole mortgaged premises by the mortgagor to Thomas H. Smith, and by the latter to Mr. Anthon in trust for the security of John Hone & Sons; and that George W. Bruen was a party with T. H. Smith in the execution of the trust deed.

G. W. Bruen was made a defendant in Mr. Stuyvesant's bill in 1829, as having an interest in the premises; and it appears by some of the documents read in evidence, that he was the executor of Thomas H. Smith.

The release executed by Stuyvesant's executors, was given at the request of George W. Bruen, who had paid the interest in 1837.

Therefore upon the facts known to the mortgagee and his representatives, or of which they, or either of them, had information, at or before the time of executing the release; they had a right to suppose that the whole mortgaged premises were at that time vested in Mr. Anthon for the benefit of the Hone's, or that they had reverted to the estate of Thomas H. Smith. The request of Bruen to release to Thorne was consistent with the latter.

On either supposition, their release of a part of the lots mortgaged could work no injury or injustice to any one.

If they had foreclosed their mortgage under the statute, they could have sold first, from the east end of the block, the west end, or the middle, as their own judgment or fancy dictated. And on the state of the case as actually disclosed to them, they could in like manner, release any portion of the lots, from the lien of their mortgage.

*Second.* The next inquiry is, had the executors of Stuyvesant any constructive notice of the rights of John Hone's executors, which rendered their release inequitable, or which subjects them to account for the value of the lots discharged from the mortgage.

1. There is no notice alleged by reason of the possession of the property. The lots were vacant and unoccupied.

2. The bill filed by Mr. Anthon to subject the premises to the payment of the debt of John Hone & Sons, did not affect Stuyvesant's executors. They were not parties to the suit, and no notice of the pendency of the suit was filed in pursuance of the statute. Whether such a notice would have affected the executors, if it had been filed, I do not determine here. The force of the *lis pendens,* aside from the statute, will be discussed in another place.

3. The next point in the order of time, is the effect of the recording of the deed from the master to William H. Thorne, and the mortgage of the 24 lots executed to the executors of John Hone by Thorne, on his purchase at the sale under Mr. Anthon's decree.

The defendants insist that after the mortgage of Thorne was recorded, it was not competent for him to shift the Stuyvesant mortgage from the whole block, to the fourteen lots in question. The mortgagee has nothing to do with this proposition, unless the record was constructive notice to him.

Notice by the recording or registry of conveyances is created by the statutes, and its effect is to be learned from their provisions, and the adjudications thereon. The statute in force in 1837, (1 R. S. 756, § 1,) enacts that every conveyance not recorded shall be void as against any subsequent purchaser in good faith, &c., whose conveyance shall first be recorded.

Neither the provision itself, or the objects of a registry law, have any reference to prior incumbrances already recorded. The effect of recording a conveyance is not retrospective, nor was it designed to change rights already vested and secured by a recorded deed or mortgage. It simply protects a purchaser who takes the precaution to search the records, and record his own conveyance, against prior unrecorded conveyances of which he had no notice. A mortgage is not made more effectual as a lien by being recorded; nor is its record any more notice to subsequent purchasers, than is the docket of a judgment regularly entered, so as to become a lien upon real estate. And there is no reason for holding that the recording of a subsequent

mortgage is constructive notice to the holder of a prior valid mortgage, that does not equally apply to make the docketing of a subsequent judgment notice to a prior mortgagee, or elder judgment creditor. Yet Chancellor Kent held expressly in *Cheesebrough* v. *Millard, ubi supra,* that the record of the judgment in that case, was not constructive notice to the prior mortgagees; that they were not bound to search for the judgment; and that as they did not know of its existence when they discharged the first mortgage, the judgment creditor who had omitted to give them notice of his equity, had no just cause of complaint.

An expression of the Chancellor's in the case of *Guion* v. *Knapp,* (6 Paige's R. 42,) was relied upon to establish that the recording the mortgagor's subsequent deed would be notice to the mortgagee. The Chancellor there alludes to the omission of the grantees to record their deeds, but he does not say that the mere recording of them would have constituted notice. I defended *Guion* v. *Knapp,* for Burdick, one of the defendants, and I remember that the deed from the mortgagors to Crandall which was read at the hearing, was recorded about the time it was executed. This fact is not mentioned in the report of the case, and the Chancellor does not refer to it in his opinion, although he exonerated from the mortgage the lands held under the deed to Crandall. I am confident therefore that he did not mean to express an opinion that the recording of the deed would *per se* be notice of its execution to the prior mortgagees.

No case has come under my observation which holds such a doctrine. It is clear that the prior mortgagee on thus releasing, acquires no new interest. He is not a purchaser, and does not fall within the purview of the recording acts. Concurring with my own judgment, I find the point decided by my learned predecessor in the case of *Talmage, President of the N. A. Trust and Banking Co.* v. *N. Wilgers, T. T. Sherwood and others,* reported in 1 N. Y. Legal Observer, 42. He there held that a mortgagee, prior to executing a release of a portion of the mortgaged premises, is not bound to search the records as to any conveyances by the mortgagor subsequent to his own mortgage; and that the record of such conveyances was not

constructive notice to him. I can add nothing to the convincing argument of the late assistant vice-chancellor on this point.

In this case, the executors of Stuyvesant were not constructively notified by the recording of the deed to Thorne or the mortgage from him to the executors of Hone.

4. It is claimed by the executors and heirs of Mr. Hone, that the pendency of the suit for the foreclosure of Thorne's mortgage was constructive notice of their rights, to Stuyvesant's executors, and had the effect of keeping the premises in the same condition they were in at the time of the filing of the bill.

The notice prescribed by the statute, was filed on this foreclosure, but the executors of Stuyvesant were not made parties.

I do not perceive that the pendency of that suit in any manner affected those executors.

The statute was not designed to establish constructive notice by a *lis pendens*, but it was enacted to abridge the existing equitable principle on that subject. Hence it does not aid the defendant's proposition.

The principle itself is applicable only to those who derive their title or claim to the property, from a party to the suit respecting it, while the suit is proceeding. The pendency of the suit between Hone's executors and Thorne, was not notice to the executors of Stuyvesant, who had title to the whole subject matter paramount to the rights of both. The suit affected subsequent purchasers from Thorne, not incumbrancers prior to Hone's original purchase.

Before the release, Stuyvesant's executors held the whole number of lots and each individual lot for their debt. By the release, they restricted their right to fourteen of the 56 lots, and relinquished their lien upon the others. There was no purchase, no new incumbrance. Each of the fourteen lots was liable for the whole debt before, and they continued liable for it still.

As to the equity of the parties before me, it is said that Stuyvesant's executors ought to have inquired into the situation of the property before releasing, and that it is strange that

they should release to Thorne without inquiry. In answer to this, it may be said that they had no information of a change of the interests, and therefore were not put upon inquiry. As they had a right to suppose the interests were, Bruen would represent either the whole title as executor of Smith, or the revisionary interest in the whole, in case the trust in Mr. Anthon were outstanding. A request from Bruen to release to Thorne, was not therefore a strange circumstance, or one requiring them to look into Thorne's title.

Before Mr. Hone's executors complain of the release, they ought to show that they have not been remiss on their part. They knew perfectly well that Mr. Stuyvesant understood their rights as they were in 1829. They appear to have had no reason to suppose that he or his representatives were apprised of any alteration in those rights. If they effected a change in their interests, which essentially altered their relative position towards the mortgage held by Stuyvesant, it was their duty to have informed him of it. Having omitted to notify him of the change, it would be unreasonable for them to complain because he or his executors have acted as if no change had occurred.

The Chancellor says, in *Guion* v. *Knapp,* " If, therefore, the prior purchasers are so negligent as to leave the holder of the incumbrance to deal with the mortgagor, or with a subsequent grantee of a portion of the premises, under the erroneous supposition that the lands conveyed to the prior purchasers still belong to the mortgagor, the mortgagee will not lose his lien by executing a release to one who happens to be a subsequent grantee."

*Third.* It is said that the release was fraudulent, and that the complainant must amend her bill so as to bring in the owners of the premises released, and subject them to contribution.

There is no pretence for asserting that the mortgagees participated in the alleged fraud. And if the defendants supposed that Thorne or Bruen acted in fraud of their rights, and ought to contribute to the payment of the mortgage, their remedy was against those parties, and not against the complainant.

Stuyvesant *v.* Hone and others.

*Fourth.* It is further contended, that if the release is valid, then a proportion of the mortgage in the ratio of the value of the released part is paid, and the remaining lots are only chargeable with the balance.

This argument is advanced upon the authority of *Stevens* v. *Cooper*, (1 J. C. R. 425.) The case is not very clearly stated, but it is apparent that Cooper, the mortgagee, had notice of Stevens having purchased the Camillus lot, before he released the four lots subsequently sold by the mortgagor. This fact, of itself, would exonerate the Camillus lot at least to the full extent which was accomplished by the decree in that case, on the well settled principles of equity which were applied in *Guion* v. *Knapp*, and the decision proceeds upon the ground that the several lots were owned by different persons subject to pay the mortgage rateably, whose rights were known to the mortgagee. The absence of notice to Stuyvesant's executors renders this case wholly unlike *Stevens* v. *Cooper*, in its controlling and decisive feature.

In the case of *Parkman* v. *Welch*, (19 Pick. 231,) also cited by the defendants, the holder of the mortgage knew of the rights of the parties when he released. That suffices to distinguish it from this case, although it might be observed that in this state, under like circumstances, equity would apply the principle of subjecting the premises in the inverse order of alienation, rather than that of contribution.

The complainant is entitled to the usual decree.