JESSE MATTESON

*v.*

E. W. THOMAS *et al.*

1. MORTGAGEE — *subsequent purchaser — subrogation.* Where a mortgagee obtains a judgment of foreclosure by *scire facias,* and one of several sub-sequent purchasers from the mortgagor pays the judgment, equity will there-upon work a subrogation of such purchaser to the rights of the mortgagee, so far as may be necessary to enable the former to compel contribution from persons liable thereto, and this right of subrogation will accrue immediately upon payment of the judgment, independently of any assignment thereof.

2. SAME — *of the right of the subsequent purchaser to demand an assign-ment.* The subsequent purchaser, in proposing to pay the judgment of fore-closure, has no right to demand an assignment of the judgment by the mortgagee to him ; and if he makes a tender of the money upon condition that an assignment shall be made, his tender will not avail him in taking away the right of the mortgagee to proceed to a sale under his judgment.

3. PRIOR MORTGAGEE *and subsequent purchasers — rights of the parties where the premises are held by different purchasers.* The rule that, where there are several subsequent purchasers of premises which have been pre-viously mortgaged, the different parcels shall be made liable to the prior lien in the inverse order of their alienation, is never applied to the injury of an innocent mortgagee.

4. SAME — *and herein, of the application of the recording act as to a prior incumbrancer.* Before a prior mortgagee can be required to shape his action in the collection of his debt, in reference to the subsequent order of alienation, he must have actual notice of what that order is, and not merely the con-structive notice derived from the registry of the deeds made by the mortgagor subsequent to the mortgage. The prior mortgagee is not within the purview of the registry laws, and such registry is not even constructive notice to him, and cannot affect his prior lien.

5. SAME — *at what time the notice should be given to the prior mortgagee.* One of several subsequent purchasers desiring the prior mortgagee to act with reference to the subsequent order of alienation, should give him notice of the facts in proper time, and request him to sell accordingly. If he is not a party to the proceedings for foreclosure, and is given no opportunity there to present his equities, he may file a bill against the mortgagee and the other subsequent purchasers, staying the sale until the respective equities can be adjusted. But he cannot remain passive until the sale has been made and then assert his rights against the mortgagee in view of facts of which the latter had no knowledge.

6. RIGHT OF CONTRIBUTION — *as between different subsequent purchasers.* Where a mortgagor sells the mortgaged premises in parcels to different persons subsequent to the mortgage, the rule that the several parcels are liable to the mortgage debt in the inverse order of their alienation, will apply to the several purchasers where there is nothing to the contrary in their contracts of purchase; and, if the mortgagee subjects them to the satisfaction of his debt in a different order, a right to contribution exists as between the subsequent purchasers, according to the rule of their liability.

7. SAME — *whether such right to contribution is affected by releases given by the mortgagee after the debt is paid.* Should some of the subsequent purchasers pay in *pro rata* proportions a part of the mortgage debt, and after a sale under foreclosure of other parcels of the premises in satisfaction of the balance due, the mortgagee gives releases to those purchasers who had paid, such releases cannot affect any rights of contribution that grew out of the sale.

8. BILL TO REDEEM — *when it will not lie — of the right of redemption under foreclosure by scire facias.* A foreclosure by *scire facias* cuts off the right of redemption from the mortgage on the part of subsequent purchasers or incumbrancers.

9. In such cases there is, after the sheriff's sale, only the statutory right of redemption, as in other sheriff's sales.

APPEAL from the Superior Court of Chicago.

The opinion of the court contains a statement of the case.

Mr. J. S. PAGE and Mr. J. H. KNOWLTON, for the appellant.

Mr. GEORGE SCOVILLE, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

On the 8th of September, 1861, one Hiram H. Scoville mortgaged three hundred and twenty acres of land to E. W. Thomas, the appellee, to secure the payment of sixty-four hundred dollars. The land was subsequently sold by Scoville, to various persons, in five different parcels, and Thomas, the mortgagee, received from the owners of all the parcels, except a fifty-four acre tract and a forty acre tract, their *pro rata* share, amounting to twenty dollars per acre. He executed and left with an agent formal releases to be delivered to them as soon as he should settle with the owners of the other parcels.

In October, 1861, there still remained due $2,070.90, and at that time he obtained judgment by *scire facias* for that sum on his mortgage. On the 4th of December, 1861, he sold, under execution, the fifty-four acre tract, for $1,600, and the forty acre tract in two parcels of twenty acres each, lying in different quarter sections, the first for $300, and the second for $231.30, the different parcels being bid off for the benefit of Thomas, to whom the certificates were assigned by the nominal purchaser, and to whom the sheriff afterward made a deed. On the day of the sale, Matteson, the complainant, claiming to own the fifty-four acre tract, by his attorney and agent, tendered to Thomas the balance due him, on condition that Thomas would assign to him the judgment. This Thomas refused to do, and the sale proceeded. On the 4th day of December, 1862, being the last day of the year of redemption, Matteson filed this bill, praying that the sale of the fifty-four acre tract be set aside, or that he be permitted to redeem. The court below, on final hearing, dismissed the bill.

In this state of facts, we are asked to set aside the sheriff's sale. We cannot do so, unless Thomas, in enforcing the lien of his mortgage and acquiring an absolute title, has transgressed some principle of law. But in what respect has he done so? The complainant insists that when payment was offered on condition that Thomas would assign the judgment he had no right to refuse to assign, and it is urged that the law itself, upon payment, would have worked an equitable assignment. This being true, no formal assignment was necessary, and Matteson cannot object that none was made. Equity would indeed have worked a subrogation of Matteson to the rights of Thomas, so far as might be necessary to enable Matteson to compel contribution from persons liable thereto. This was all he was entitled to do, and for this purpose a formal assignment was wholly needless. His rights in this respect, whatever they may have been, would have accrued immediately upon payment of the judgment and independently of any assignment.

As Matteson made no unconditional tender, what had Thomas

the right to do ?   Clearly to proceed with his sale, and offer, first, either the fifty-four acre tract or the two twenty acre tracts as he should deem proper.  It is insisted by the appellant, that, in cases of this character, the different parcels should be made liable in the inverse order of their alienation.  We have so decided at the present term in the case of *Iglehart* v. *Crane and Wesson*, but the principle has no application under the pleadings and proofs in the case before us.  This rule is never applied to the injury of an innocent mortgagee.  Before he can be required to shape his action in reference to the subsequent order of alienation, he must have actual notice of what that order is, and not merely the constructive notice derived from the registry of deeds made by the mortgagor subsequent to the mortgage.  Such registry is not even constructive notice to him, and cannot affect his prior lien.  He is under no obligation to search the records to ascertain what the mortgagor may have done subsequent to the making and recording of his mortgage. *Stuyvesant* v. *Howe*, 1 Sand. Ch. 426 ; *King* v. *Mc Vickar*, 3 id. 192 ; *Blair* v. *Ward*, 2 Stockt. (N. J.) 119.

The prior mortgagee is not within the purview of the registry laws which, by their terms, and by every reasonable rule of construction, refer to subsequent purchasers and creditors. In the cases above cited, it is held, that a mortgagee is not required, before releasing a part of the mortgaged premises, to search the record for subsequent conveyances, and that subsequent purchasers, wishing to protect themselves, must bring home actual notice to the mortgagee.   The same principle is held, as to subsequent judgment creditors, by Chancellor KENT, in *Cheesebrough* v. *Millard*, 1 J. C. 414.

In the present case, Matteson cannot ask that this sale be set aside on the ground that the different parcels were not sold in the inverse order of their alienation, because there is no proof that Thomas knew what that order was.   Matteson should have informed him of the facts and have requested him thus to sell. Or, as he was not a party to the *scire facias*, and had had no opportunity of presenting his equities in court, he might have filed a bill in chancery against the mortgagee and the subse-

8—41ST ILL.

quent purchasers, staying the sale until the respective equities could be adjusted. But he cannot remain passive until the sale has been made, and then ask the court to set it aside because the mortgagee acted without reference to a state of facts of which he had no knowledge, and as to which the complainant had ample opportunity to inform him but neglected so to do.

It is urged in the argument, that the mortgagee had no right to release a part of the land on the payment of twenty dollars per acre, and then subject the residue to the payment of a greater sum; but the proof shows that he did not release before the sale. He simply received what was considered the *pro rata* portion of several parcels sold, and agreed to release on receiving the residue from the other owners, and the releases were left in the custody of his agent, to be delivered when the debt should be paid, and they were not delivered until after the sale. The sale itself operated as an extinguishment of the lien, and the subsequent delivery of the releases was unimportant, and cannot affect any rights of contribution that grew out of the sale.

We can discover no wrongful act in all the proceedings of the mortgagee to enforce his lien, and we see no ground on which we can now interfere to set aside the sale.

Neither is there any ground for allowing redemption. This court has several times decided that a foreclosure by *scire facias* cuts off the right of redemption from the mortgage on the part of subsequent purchasers or incumbrancers. *Chickering* v. *Failes,* 26 Ill. 517; *State Bank* v. *Wilson,* 4 Gilm. 58. In such cases there is, after the sheriff's sale, only the statutory right of redemption as in other sheriff's sales, and of this right this complainant neglected to avail himself.

But, while we see no ground for allowing redemption, there may be a right to contribution. There are some facts in the record which would indicate that each parcel was sold by the mortgagor, subject to its *pro rata* share of the mortgage. If that was not so, then the parcels last sold should first be made to pay the mortgage, to the extent of their value. It may be

that they have already done so.  The present bill was not brought for contribution, and there is not enough in this record to enable us to say upon what grounds it should be adjusted, or even that the right to contribution exists.  We will, however, so far modify the decree of the court below that the bill will stand dismissed, without prejudice, leaving the complainant at liberty to file a bill for contribution unembarrassed by this proceeding.  The costs of this court will be taxed against the appellant.

*Decree modified.*