# Pitts *et al. v.* American Freehold Land Mortgage Co.

123　469
130　253

*Bill in Equity to set aside Foreclosure of Mortgage and to redeem.*

1. *Foreclosure of mortgage; by whom right of redemption can be asserted.*—After a mortgage has been foreclosed, to entitle one to redeem, it must be shown that he has an interest in the land derived through the mortgagor, so that in fact his interest constitutes a part of the mortgagor's equity of redemption.

2. *Same; rights of grantee of mortgagor; notice must be given of change of ownership to mortgagee; registration not sufficient notice.*—Where, after the execution of a mortgage upon land the mortgagor by warranty deed conveys a part of the mortgaged premises, the right of the mortgagee to deal with the mortgaged premises in any manner consistent with his general rights as secured by the mortgage is not affected by such subsequent conveyance, unless the mortgagee, before attempting to assert such rights, has received notice thereof; and a record of the subsequent conveyance in the office of the probate judge, does not, of itself, constitute constructive notice to the mortgagee so as to prevent him from dealing with the mortgaged premises in any manner authorized by the mortgage. And this right applies as against infants who claim under the subsequent conveyance.

3. *Same; same; same; case at bar.*—On a bill filed by minors to set aside the foreclosure of a mortgage executed by their father and to redeem, it was shown that after the complainants' father and mother executed the mortgage to 680 acres of land, the father subsequently, by warranty deed, conveyed 200 acres of land to the complainants' mother, who died leaving the complainants her only heirs. There was no actual notice given to the mortgagee of this subsequent conveyance from the mortgagor to his wife, but the deed was recorded in the office of

the judge of probate. Upon default in the payment of the mortgage debt, the mortgagee sold the entire tract of 680 acres under the power contained in the mortgage and became the purchaser thereof. The mortgage did not authorize the mortgagee to become the purchaser. By the bill of the complainants which was filed while their father was still living, they sought to set aside the foreclosure as to the 680 acres, to hold the purchaser at the foreclosure sale responsible as mortgagee in possession for all of the rents collected from the entire tract, and have them applied on the mortgage debt, and then to have the mortgage foreclosed on the 480 acres to the exoneration of the 200 acres which were inherited by the complainants from their mother. *Held*: That in such case the complainants were not entitled to the relief prayed for.

APPEAL from the Chancery Court of Shelby.

Heard before the Hon. J. R. DOWDELL.

The bill in this case was filed by the appellants against the appellees. The facts of the case are sufficiently stated in the opinion.

JAMES E. WEBB and W. F. THETFORD, JR., for appellants.

KNOX & BOWIE, *contra.*—While it may be true that sub-vendees of property subject to a mortgage have a right to ask that the property be sold in inverse order of alienation such right is lost by failure to assert the same before foreclosure. This was expressly decided by the Supreme Court of Illinois in the case of *Hosmer v. Campbell*, 98 Ill. 572, where it was held that "Where several tracts of land are included in the same mortgage, and there have been subsequent sales by the mortgagor, a purchaser from the mortgagor desiring that the sales under the mortgage shall be made in the inverse order of alienation, must give actual notice of his rights before any sale is made under the mortgage. After the sale has been made without such notice having been given, he cannot have any relief in respect to which tracts shall be first sold."—15 Am. & Eng. Encyc. of Law, 839, note 1.

But it is suggested that the complainants are infants, and therefore that the rule applicable to adults does not apply. But, why not? The Mortgage Company made

no contract with the complainants and really occupies. no contractual relation to them. The right to foreclose. this mortgage was absolute. The alleged right of complainants was derivative and came to them, if at all, by reason of being heirs of Mary L. Pitts. Mr. Tyler, in his work on "Infancy,"·says: "An infant cannot avail himself of his infancy to excuse the non-assertion of his rights under an executory agreement made with his ancestors, when the immediate performance of his part of the contract is essential to the interest of the other contracting party." The foreclosure sale, not having been disaffirmed by John W. Pitts within two years, is valid as to him, and the complainants, who are not privies in contract or estate with him, have no right to disturb this foreclosure.—In *McCall v. Mash,* 89 Ala. 487, it is held: "If a mortgagee becomes the purchaser at his own sale under a power in the mortgage, without the consent of the mortgagor, the latter may disaffirm the sale within a reasonable time, and claim a redemption and account; but, not having exercised this right himself, he cannot assign or convey it to another person, so as to authorize the assignee to disaffirm and redeem." And to the same effect is the decision of the *American Freehold Land Mortgage Co. v. Sewell,* 92 Ala. 163, 169.

TYSON, J.—The appeal in this cause is prosecuted by the complainants who are minors from a decree sustaining a demurrer to their bill of complaint. The facts alleged upon which they predicate their right to the relief sought by the bill may be briefly stated as follows: The father and mother of the complainants executed a mortgage to the respondent Mortgage Company in the year 1886 upon six hundred and eighty acres of land belonging to the father. About one year after the execution of this mortgage, the father of complainants executed to his wife, their mother, a warranty deed for valuable consideration, to two hundred acres of the land conveyed by their mortgage to respondent. There was a default in the payment of the debt secured by the mortgage, and in 1892, after the death of the complainants' mother, the mortgage was foreclosed under the power contained in it and the respondent Mortgage Company became the

purchaser of the entire tract without authority to do so under the terms of the mortgage, and went into the possession of the lands.

The relief sought by the bill upon these facts, is to set aside the foreclosure sale of the lands as a whole, including the two hundred acres conveyed to complainants' mother, and also to redeem them and to hold the Mortgage Company liable as mortgagee in possession for the rents collected by it upon the entire six hundred and eighty acres to be applied upon the mortgage debt; and "so redeeming to have said mortgage assigned and enforced, for their protection and benefit, upon the four hundred and eighty acres by a sale thereof, under a decree of this court, to the exoneration of their said two hundred acres."

There were many grounds of demurrer assigned to the bill; and those sustained by the chancellor practically go to the rights of the complainants to have the sale set aside as to the whole tract and their right to redeem the four hundred and eighty acres. Some of the grounds of the demurrer assigned recognize the right of the complainants to redeem the two hundred acres which were conveyed by the deed to their mother. Independent of the recognition by the Mortgage Company of this right in the complainants, it would seem there is no question of their having it.—2 Jones on Mortgages (5th ed.), § 1055, *et seq.; Howser v. Cruikshank,* 122 Ala. 256, and authorities therein cited.

It is contended by complainants, however, that in order to secure to themselves the benefit of the equity of redemption they will be required to pay the entire mortgage debt to the Mortgage Company; that there can be no apportionment of it so as to relieve the two hundred acres in which they still have an equity of redemption from the lien of the mortgage by paying their aliquot part. As to the correctness of this contention we express no opinion as it is not necessary to a decision of the question here involved. The authorities on this subject are not altogether uniform (2 Jones on Mortgages (5th ed.), § 1074, and note on page 34) ; and the question has never been decided in this State that we are aware of.

[Pitts *et al.* v. American Freehold Land Mortgage Co.]

The cases insisted upon as supporting appellants' contention rest upon a different principle.

The complainants confessedly having the right to redeem the two hundred acres, is it true that the sale and purchase by the Mortgage Company of the four hundred and eighty acres more than five years before the filing of the bill, and which has ripened into an indefeasible title as against the mortgagor, may be avoided by them? Unless this question can be answered affirmatively, the decree of the chancellor must be affirmed. The complainants derived their equity of redemption to the two hundred acres by inheritance from their mother, being her only heirs at law. They never owned any property interest in the four hundred and eighty acres. The equity of redemption as to this portion of the tract conveyed by the mortgage, after the death of the wife, resided exclusively in their father, who is still living and one of the respondents to their bill. Unlike in this respect to the case where there was a voidable foreclosure and the heirs at law of the mortgagor after his death disaffirmed the sale. In the latter case, the equity of redemption in all the realty conveyed by the mortgage descended to his heirs at law. Mr. Jones says: "To entitle one to redeem he must have an interest in the land derived through the mortgagor, so that in effect his interest constitutes a part of the mortgagor's equity of redemption."—2 Jones on Mortgages, § 1055 a. And the mortgagee in possession under a voidable foreclosure sale after the mortgagor's death is regarded as holding under the mortgage in privity of title with his heirs at law.—*Lovelace v. Hutchinson,* 106 Ala. 417; *Am. F. L. M. Co. v. Sewell,* 92 Ala. 163. No contract in the present case can be said in any sense to exist between the complainants and the Mortgage Company. And their right to redeem the two hundred acres rests solely and exclusively upon their inheritance of the equity of redemption from their mother who acquired this property interest in it. As to the four hundred and eighty acres she had no such right as descended to her heirs at law.

It is contended, however, that this right to avoid the sale as to the four hundred and eighty acres grows out of their equity to have this portion of the tract first sold

for the payment of the mortgage debt to the exoneration of their two hundred acres. The equity of exoneration invoked by them says Mr. Pomeroy, "is one of purely equitable origin and is *not an absolute rule of law;* and if the peculiar equitable reasons on which it rests are wanting, it ceases to operate." One of the cases in which he says the doctrine is applicable is where the grantee of the mortgagor acquires a title by warranty deed to a portion of the tract previously mortgaged.—3 Pomeroy Eq. Jur., 1225; *Howser v. Cruikshank, supra.* It is obvious that the doctrine has its foundation in the intention of the parties to the warranty deed. The grantee takes the parcel conveyed by the deed free from the mortgage lien and the grantor assumes the whole burden of the incumbrance as a charge upon *his own parcel.* The mortgagee is not a party to this contract, and it can in nowise concern him. His lien upon the entire tract is not impaired by it and indeed could not be. The entire tract remains as a security to his debt, and as against him, before foreclosure or before a release by him of any portion of the mortgaged premises in case of several sub-purchases from the mortgagor, the grantee in the first deed has only the right to have him after notice to foreclose or release so as not to disturb the equities subsisting among the various owners or not to destroy their right of precedent in the order of liability, or not to defeat their rights of ratable contribution or of complete and partial exoneration. Mr. Pomeroy says further: "No such obligation, however, rests upon the mortgagee, nor is he prevented from dealing with the mortgaged premises in any manner consistent with his general rights as a mortgagee, unless he has received notice of the conveyances to the subsequent owners whose interest could be affected by his dealings. Since his mortgage is a prior lien and creates an incumbrance alike upon all parts of the land subject to it, no subsequent change in the ownership of the mortgaged premises, of which he is ignorant, can in any degree control or limit his original rights and power conferred by the security. It is settled, therefore, that notice must be given to the mortgagee of any subsequent conveyance of a parcel of the mortgaged premises, so as to prevent him from affecting

the equities of the grantee therein by his dealing with other portions of the same premises. It is also settled in this connection, that a record of the subsequent conveyance is not a constructive notice to the prior mortgagee, so as to prevent him from dealing in any manner with the mortgaged premises."—3 Pomeroy Eq. Jur., § 1226; 2 Jones on Mortgages, § 1624; *Hosmer v. Campbell*, 98 Ill. 572; *Cheesebrough v. Millard*, 1 Johns. Ch., 409.

The bill of complainants contained no allegations of actual notice to the mortgagee before the foreclosure by it of the mortgage of their title to the equity of redemption of any portion of the tract conveyed by the mortgage. The only allegation in this respect was, that the deed to their mother was duly recorded in the county in which such conveyances are required to be recorded. This was insufficient under the authorities above cited for the obvious reason that registration of conveyances is for the protection of creditors and purchasers against dormant conveyances and loans of which the creditor or purchaser had no notice. The Mortgage Company was not required to search the records for the purpose of ascertaining the status of the title of the equity of redemption after the execution of the mortgage to it.—2 Jones on Mortgages, § 1624; *Matteson v. Thomas*, 41 Ill. 110. Neither can it be charged with any such duty towards complainants because they were infants.

We entertain no doubt that a *bona fide* purchaser for value without notice of an unrecorded conveyance held by an infant would be protected. And the infant whose duty it was to have his conveyance recorded cannot invoke, to the injury of such *bona fide* purchaser, his infancy on failure to perform any act required of him by law as an excuse and thereby secure a benefit to himself. As said by Lord Coke, "And so it is of an infant: his *laches*, for not performing of a condition annexed to a state [an estate], either made to his ancestor or to himself, shall bar him of the right to the land forever."

Tyler in his work on Infancy says: "An infant cannot avail himself of his infancy to excuse the non-assertion of his rights under an executory agreement made with his ancestor, when the immediate performance of

his part of the contract is essential to the interest of the other contracting party."—Tyler on Infancy & Coverture, 161.

Actual notice of the complainants' equity at the time of the foreclosure, as we have seen, was the essence of their right to control in any degree or limit the exercise by the Mortgage Company of the power conferred by the mortgage.—2 Jones on Mortgages, § 1624; *Matteson v. Thomas, supra; Lausman v. Drahos,* 8 Neb. 457; *Hoy v. Brumhall,* 19 N. J. Eq. 563. Without this notice, the complainants had no such right, and as to its acquisition they are bound upon the plainest principles of equity by the same rules of law that govern adults. If the right never had any existence, then, of course it cannot be enforced. If they had ever had the right, no *laches* would be imputed to them so as to deprive them of its enforcement during their minority. It is of no consequence whether the failure to acquire the right grew out of their want of capacity to give the required notice. The courts cannot create it for them, but can only enforce the remedies provided by law for its protection and preservation. And the fact that the Mortgage Company exercised the power of sale in its mortgage in such manner as that the mortgagor might have, within a reasonable time, disaffirmed cannot affect the principle under consideration. It violated no rule of law or public policy and the sale and purchase were not void, but only voidable at the instance of the mortgagor alone. As to all the world except him, it was valid as to the four hundred and eighty acres, and the Mortgage Company acquired an indefeasible title. He elected to affirm, and by his election removed the only impediment in the way of this indefeasible title becoming absolutely unassailable.

The decree of the chancery court is affirmed.