# Threefoot Bros. & Co. *v.* Hillman *et al.*

## *Bill in Equity by Junior Mortgagee to redeem.*

1. *Right of junior mortgagee; can not have lands sold in inverse order of alienation after foreclosure of prior mortgage* —The right of a junior mortgagee to have lands conveyed in prior mortgages sold in the inverse order of their alienation, is destroyed by the foreclosure of one of the prior mortgages and the purchase of the lands at the sale by a third party, no notice to the purchaser of the equity of the junior mortgagee being averred or proven.

2. *Husband and wife; wife joining in conveyance for the purpose of releasing her dower not bound by covenants of warranty.* Where, while the Code of 1886 was in force, a wife joins her husband in the execution of a mortgage upon his lands, for the purpose of conveying her dower and homestead rights, and such mortgage contains a statutory warranty, the wife is not thereby estopped from setting up a title to said lands subsequently acquired by her; she not being bound by the covenants of warranty in said mortgage.

3. *Right of junior incumbrancer; can not go into equity to enforce senior incumbrance; must first redeem by payment of debt.*—A junior incumbrancer can not maintain a bill in a court of equity to enforce both the senior incumbrance and his own for the payment first of the superior demand and then of his own indebtedness. His remedy is, first, to redeem the lands from the senior incumbrance, and then proceed to enforce his lien upon the lands for reimbursement of the redemption money and the satisfaction of his own demand; but this right can not be enforced until the maturity of the prior indebtedness.

4. *Same; not superior to mortgage given senior mortgagee for purchase money of lands sold under prior mortgage.*—Where there are two mortgages upon the same land, and the senior mortgagee sells said land under the power contained his mortgage, and the purchaser executes to him a mortgage to secure the purchase price agreed to be paid at the foreclosure sale, such mortgage by said purchaser is a superior lien to that held by the junior mortgagee.

[Threefoot Bros. & Co. v. Hillman *et al.*]

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. THOMAS H. SMITH.

On September 8, 1896, Threefoot Bros. & Co. filed a bill in this case against Joseph J. Hillman, Emma R. Hillman, Jezrell P. Hillman, Maxwell Peale & Allen, a partnership, and the British & American Mortgage Company, limited, a corporation. Upon demurrers being sustained to the bill it was amended. The bill as amended averred the following facts: On the 11th day of February, 1892, the said J. J. Hillman, Emma R. Hillman and Jezrell P. Hillman executed a mortgage on certain specifically described lands to said Maxwell, Peale & Allen, to secure the payment of the sum of $9,491.80, which said sum of money was divided into two notes, one of which matured on the 1st day of December, 1892, and the other matured on the 1st day of February, 1893. J. J. Hillman, Emma R. Hillman, his wife, and Jezrell P. Hillman, on the 15th day of April, 1893, executed two mortgages on certain lands to the British & American Mortgage Company, limited. One of said mortgages was executed to secure a loan of $6,000 on the same lands that were included in the said mortgage to said Maxwell, Peale & Allen. The last payment of said loan of $6,000 became due and payable on the 1st day of November, 1897. A certified copy of this mortgage is made an exhibit to the bill as amended. The other one of said mortgages was executed to secure a loan of $2,000 on certain lands described therein which constituted a part of the separate statutory estate of said Emma R. Hillman. The last payment of said loan of $2,000 became due and payable on the 1st day of November, 1897. On the 30th day of May, 1893, the said Maxwell, Peale & Allen executed to the said British & American Mortgage Company, limited, a waiver of the priority of their mortgage on the said lands mortgaged to them by the said Hillmans, thereby making the mortgage of the said British & American Mortgage Company, on said lands the senior, or first, mortgage on same. At the time of the execution of said above mortgages, the said J. J. Hillmon owed complainants about the sum of $5,000. The sum of $8,000, which was realized from the said mortgages

executed to the said British & American Mortgage Company was paid to said Maxwell, Peale & Allen as a credit on the said mortgages executed to them. On the 27th day of June, 1893, J. J. Hillman and Emma R. Hillman executed a mortgage to complainants on the lands owned and possessed by J. J. Hillman, which were also included in the mortgages to the British & American Mortgage Company, and to Maxwell, Peale & Allen. This mortgage was given to secure the payment of the sum of $5,938.17, as evidenced by two notes, the first payable on the 30th day of November, 1893, and the second on the 20th day of December, 1893. The mortgage executed to complainants was subordinate to the mortgages executed to said British & American Mortgage Company, and to said Maxwell, Peale & Allen on said lands. On the 9th day of May, 1896, the said Maxwell, Peale & Allen made a pretended foreclosure of the mortgage to them, under power of sale contained therein, and at said foreclosure sale the said Emma R. Hillman pretended to purchase the lands included therein, and Maxwell, Peale & Allen executed a deed to her to said lands. The foreclosure sale of said lands under the mortgage executed to said Maxwell, Peale & Allen and the purchase of said lands at such sale by Emma R. Hillman were fraudulent. Maxwell, Peale & Allen, the British & American Mortgage Company, J. J. Hillman, Emma R. Hillman and the said J. P. Hillman all conspired together to defraud the complainants, and to prevent them from enforcing the mortgage executed to them on the lands included therein. The mortgage executed to said Maxwell, Peale & Allen was fully paid off before said foreclosure sale occurred. Emma R. Hillman, at said foreclosure cale, only purchased the equity of redemption to said lands, which was the only interest in and to same that passed under said foreclosure sale. The conspiracy between the said parties defendant to defraud complainants is shown by the fact that two different tracts of land were included in the foreclosure sale, and purchased at said sale by said Emma R. Hillman, one of which was owned and possessed by J. J. Hillman,

and mortgaged by him and said Emma R. Hillman to Maxwell, Peale & Allen, and the British & American Mortgage Company and to complainants as aforesaid, containing 1,403 acres, the other one of which was owned and possessed by said J. P. Hillman, and mortgaged by him to Maxwell, Peale & Allen and the British & American Mortgage Company, containing 830 acres, and Emma R. Hillman purchased both of said tracts of land at said foreclosure sale for the sum of $4,584.63, or at about two dollars and five cents per acre. It was necessary for a reference to be ordered to the register of the chancery court to state an account between J. J. Hillman, Emma R. Hillman, J. P. Hillman and Maxwell, Peale & Allen and the British & American Mortgage Company to ascertain what proportion of the purchase price for said lands at the foreclosure sale was paid by said Emma R. Hillman for each tract of same separately. This reference was necessary to enable the complainants to make a tender of the amount of money necessary to redeem, and to enable them to redeem the said lands that were mortgaged to them. The bill of complaint, as amended, was filed to redeem the said lands that were mortgaged, as aforesaid, among other things, and the complainants were ready and willing to redeem said lands that were mortgaged to them from the British & American Mortgage Company and from Emma R. Hillman or Maxwell, Peale & Allen, and would make tender of the amounts of money necessary to make said redemption if they had the means outside of the chancery court to ascertain said amounts of money, and they offer and agree to pay each of said parties whatever amount of money should be decreed that they were entitled to, and to do and perform complete equity in the premises. Said tracts of land can not be sold to advantage, or for their value, if sold in bulk, and that each tract of said lands should be sold separately. The tracts of land that were mortgaged by the said Emma R. Hillman to the said British & American Mortgage Company and by the said J. P. Hillman to the said British & American Mortgage Company and to Maxwell, Peale & Allen should be sold first and before selling the tract of land

on which the complainants had a mortgage. Maxwell, Peale & Allen are due complainants the sum of $2,000, which amount is the value of cotton received by Maxwell, Peale & Allen before said foreclosure sale, which said cotton belonged to complainants, for that it was included in the mortgage that was executed to them on the said tract of land, and said sum of money should be credited on the amount that the court should decree, if any amount, for them to pay in order to redeem the lands that were mortgaged to them, and sold at said foreclosure sale. The release and waiver of the mortgage that was executed by Maxwell, Peale & Allen in favor of the mortgage that was executed to the said British & American Mortgage Company was in writing upon the margin of the record of the said mortgage executed to the said Maxwell, Peale & Allen in the office of the judge of probate of Sumter county, Alabama. Maxwell, Peale & Allen, the said British & American Mortgage Company, J. J. Hillman, Emma R. Hillman and J. P. Hillman have combined to cover up, and to conceal from complainants the true amounts of money due by J. J. Hillman, Emma R. Hillman, and J. P. Hillman upon all of the mortgages that were executed by them to Maxwell, Peale & Allen and to the British & American Mortgage Company, in order to defeat the enforcement of the mortgage that was executed to complainants, and to prevent the collection of their said debt. The said British & American Mortgage Company is carrying its mortgage on the said lands that were included in said foreclosure sale, apparently and pretendedly free of payments and credits, and demand of the complainants the entire amount of the consideration of its mortgage before it will permit the complainants to redeem the tracts of lands sold at said foreclosure sale, and Emma R. Hillman, in accordance with a prearranged agreement participated in by the British & American Mortgage Company, Maxwell, Peale & Allen, J. J. Hillman, J. P. Hillman and Emma R. Hillman, is secretly paying off the debt due the British & American Mortgage Company from time to time with the

rents of the lands purchased by her at the foreclosure sale, and with the money of J. J. Hillman. A reference to the register of the court is necessary to investigate all of the secret transactions among all of said parties as averred and set out. Emma R. Hillman is in the legal and equitable attitude of a mortgagee in possession of the said tracts of lands that she purchased at said foreclosure sale, and she is liable for the rents, incomes and profits of said tracts of lands, and the rents, incomes and profits of same are of the value of $3,000 annually. There is an agreement between all of said above named parties, and especially between the British & American Mortgage Company, Emma R. Hillman and the said J. J. Hillman that the British & American Mortgage Company will not foreclose its mortgage on the said tracts of land that were sold at said foreclosure sale, but will hold it over the said tracts of land until the rents therefrom will pay it in full, when said mortgage will be transferred, or assigned, to said Emma R. Hillman or some one in her interest, so that she can still hold it over the said tracts of land, and that this is done to defraud the complainants of their rights. The said bill of complaint, as amended, prays for process against the defendants thereto, for a discovery against Maxwell, Peale & Allen and the British & American Mortgage Company as to the indebtedness of J. J. Hillman to them, of what said indebtedness consists, when it was contracted, what credits have been made on same, how said credits were paid, whether in money or cotton, if in cotton, when it was delivered to them, and how much cotton they received from J. J. Hillman; for an ascertainment of the amount of the indebtedness due by J. J. Hillman to complainants, including a reasonable attorney's fee and the cost of the collection of said indebtedness; for a reference to the register to ascertain a true statement of the indebtedness due by J. J. Hillman, Emma R. Hillman and J. P. Hillman to the British & American Mortgage Company, a true statement of the account or indebtedness between the said Hillmans and Maxwell, Peale & Allen, showing the amount of money that was due on, the mortgage that was executed to

[Threefoot Bros. & Co. v. Hillman *et al.*]

them on said land before same was foreclosed at said foreclosure sale, the payments made thereon, when made and how made; for an ascertainment of the amount of the purchase money paid by Emma R. Hillman at the foreclosure sale for the tract of land on which the complainants held their mortgage in order for them to know what amount of money they would have to pay Emma R. Hillman to redeem said tract of land from her; for permission to redeem the said tract of land included in the mortgage executed to them; for a decree instructing the register to sell all or a sufficiency of the said lands included in the mortgage executed to Maxwell, Peale & Allen and the British & American Mortgage Company, and not included in the said mortgage executed to complainants to pay off in the order of their priority the said mortgages executed to Maxwell, Peale & Allen and the British & American Mortgage Company; for an ascertainment of the reasonable rent, per year, for all of said tracts of land purchased by Emma R. Hillman at said foreclosure sale of same, during the time that she had been in possession of same, and a reasonable rent, per year, during said time, for the tract of land included in the said mortgage executed to complainants, separately; that Emma R. Hillman be charged with the amount of said rents as a mortgagee in possession of said lands; that the amount of said rents received by her from the said tracts of land included in the mortgage executed to complainants be deducted from the amount of money that the complainants may be required to pay to Emma R. Hillmna for the redemption thereof, and that the balance of said rents be collected by the register and applied to the payment of the said mortgages executed to the British & American Mortgage Company; for a receiver *pendente lite* for all of said lands; and for general relief.

Each of the defendants filed separate answers, in which they averred in detail the indebtedness of J. J. Hillman to Maxwell, Peale & Allen, the execution of the mortgages by J. J., J. P. and Emma R. Hillman to Maxwell, Peale & Allen, to secure said indebtedness, the subsequent execution of the two mortgages, as.

averred in the bill, to the British & American Mortgage Company, the execution of the instrument by which Maxwell, Peale & Allen waived priority of their mortgage and subordinated their claim and lien to the lien of the mortgages given to the British & American Mortgage Company, and the subsequent execution of a mortgage by J. J. Hillman to the complainants. It was averred in each of said answers that the indebtedness to secure which the several mortgages to the respective defendants were executed, were *bona fide* debts and binding obligations. In each of said answers it was denied that there was any fraud practiced in the execution of the several instruments, that there was any collusion or fraudulent agreement on the part of the several parties thereto to hinder, delay and defraud the complainants, and that the purchase by Emma R. Hillman of the property conveyed in the mortgage to Maxwell, Peale & Allen, at the foreclosure sale, was a *bona fide* purchase and was not made with an agreement or understanding on the part of the mortgagees to the morgagor and the purchaser to defraud complainants; and it was further denied that there was any conspiracy in any way between said parties to defeat the collection of the debts of the complainants.

The evidence showed the execution of the several instruments as stated above, but failed to sustain the charge of fraud on the part of the defendants for the purpose of defeating the collection by the complainants of their indebtedness, as averred in the bill. There was evidence on behalf of the complainants tending to show that J. P. Hillman was the principal debtor to Maxwell, Peale & Allen at the time of the execution of the mortgage to said firm, and that he did not sign said mortgage and convey his lands therein simply as a surety for J. J. Hillman, as the principal debtor.

On the trial there was positive evidence on the part of the defendants that the mortgage given by J. J., J. P. and Emma R. Hillman to Maxwell, Peale & Allen was given to secure a debt of J. J. Hillman alone, and that J. P. Hillman signed said mortgage and included his lands therein solely as a surety of J J. Hillman. The other facts of the case necessary to an understand-

ing of the decision on the present appeal are sufficiently stated in the opinion.

On the final submission of the cause on the pleadings and proof, the chancellor rendered a decree adjudging that the complainants were not entitled to the relief prayed for, and ordered the bill dismissed. From this decree the complainants appeal, and assign the rendition thereof as error.

SMITH & HARKNESS and A. B. McEACHIN, for appellant.—By reason of the covenant of warranty contained in the mortgage executed by J J. Hillman and Emma R. Hillman to the complainants, when Emma R. Hillman purchased at the foreclosure sale under the mortgage sale of Maxwell, Peale & Allen, the title acquired by her vested *eo instanti* in the complainants. We come down to the decisions of our own State for the above principle of law, and find that it is clearly and specifically enunciated in a long line of decisions.—*Chapman v. Abrahams,* 61 Ala. 108; *Sayre v. Sheffield L., I. & C. Co.,* 106 Ala. 440; *Swan v. Gaston,* 87 Ala. 574; *Prince v. Prince,* 67 Ala. 568; *Owen v. Bankhead,* 76 Ala. 143; *Dunlap v. Mobley,* 71 Ala. 102.

There has never been an illegal subrogation in the case.—*Turner v. Flinn,* 67 Ala. 529. "When mortgages held by senior and junior incumbrances cover in part the same property, and the mortgagor is insolvent and the entire property is sufficient to pay both debts, the junior may compel the senior mortgagee to exhaust the funds on which he alone held a lien, before resorting to that covered by both mortgages."—Story's Equity Jurisprudence, § 633. Threefoot Bros. & Co. were junior mortgagees, and have the right to redeem the lands upon which they held a mortgage, beyond all question.

R. CHAPMAN, S. C. M. AMASON and ALTMAN & BROCKWAY, *contra.*—The relation of suretyship in the said mortgages gave the legal right to the said Jezrell P. Hillman to demand when Maxwell, Peale & Allen foreclosed their mortgage, that they should exhaust the

assets of J. J. Hillman to pay the debt secured by the said mortgage before they could appropriate any of his assets to pay the same, and the law compelled them to accede to his demand in this respect.—24 Am. & Eng. Ency. Law (1st ed.)., 798.

The evidence shows that the mortgages of the British & American Mortgage Company (limited) were not due and payable on the date of the foreclosure of the Maxwell, Peale & Allen mortgage, or when this suit was commenced: hence the appellants could not compel the foreclosure of same, or redeem them from said mortgage.—*Kelly v. Longshore,* 78 Ala. 203; *Ware v. Hamilton-Brown Shoe Co.,* 92 Ala. 145; *Wimberly v. Mayberry,* 94 Ala. 262.

The bill of complaint as amended certainly does not contain equity as a bill to enforce the statutory right of redemption under the provisions of section 3505 of the Code of 1886, *et seq.* Section 3507 of the Code of 1886 expressly provides that a party exercising the statutory right of redemption must pay, or tender, to the purchaser at the foreclosure sale, or his vendee, the purchase money, before a redemption under the statute can be made.—Code of 1886, § 3507; *Beebee v. Buxton,* 99 Ala. 117; *Farley v. Nagle,* 119 Ala. 622; *Butler v. Hanna,* 103 Ala. 481; *Beatty v. Brown,* 101 Ala. 695.

TYSON, J.—The right of complainant, if it ever existed, to have the lands mortgaged to Maxwell, Peale & Allen, sold in the inverse order of their alienation was destroyed by the foreclosure of that mortgage and the purchase of the lands at the sale by the respondent, Mrs. Hillman; no notice of their equity having been averred or proven.—*Pitts v. American Freehold Land Mortgage Co.,* 123 Ala. 469. Obviously, to avoid this result, the complainants made the charge in their bill that the foreclosure sale was fraudulent, in this, that there was a conspiracy between the mortgagee, the mortgagors and the purchaser to defeat them in the collection of their debt, and that, in fact, there was nothing due to the mortgagees upon their mortgage when the sale was had. The evidence utterly fails to sustain this charge.

On the contrary, it establishes clearly and beyond cavil, that the amount bid at the sale by the purchaser was the balance due upon the mortgage debt and the sale was fairly, openly and publicly conducted, and not the semblance of a conspiracy shown between any persons to defraud or injure the complainants.

The bill is without equity to enforce complainants' statutory right of redemption as against the purchaser, Mrs. Hillman, and we do not understand that they make that insistence.—Code, § 3507; *Beebe v. Buxton*, 99 Ala. 117; *Beatty v. Brown*, 101 Ala. 695, and authorities cited therein.

The lands conveyed by the mortgage to the complainants and which they purchased at the foreclosure sale had under it, belonged to Mrs. Hillman's husband. It is true, she joined in the mortgage as his wife, doubtless for the purpose of conveying her dower and homestead rights, as these were the only rights which she was entitled to in the lands. Having purchased these lands at the foreclosure sale of the mortgage held by Maxwell, Peale and Allen, to which the complainant's title was subordinate, it is contended, that, because the mortgage of complainants' contained a statutory warranty, the title she acquired enured to their benefit and passed *co instanti* to them. The mortgage to complainants was executed and foreclosed while the Code of 1886 was in force, and indeed, the purchase by Mrs. Hillman was while the provision of that Code governed. Under its provisions she was only *sui juris* as to her separate estate, with limitations imposed upon her right, not necessary here to enumerate, to contract, alienate and mortgage it.—§§ 2341 *et seq*. Had the property conveyed by mortgage to the complainants, been owned by Mrs. Hillman, instead of by her husband, the debt secured by the mortgage being his debt and not hers, the mortgage would have been void and its recitals would not have worked an estoppel as against her.—*Richardson v. Stephens*, 122 Ala. 301; *Price v. Cooper*, 123 Ala. 392. The debt and the land conveyed, however, as we have said, were both her husband's. The statutes relieving her from the bonds of coverture, do not go to the ex-

tent of making her *sui juris* as to her dower and homestead rights in her husband's lands. Her act of warranty, by joining in the mortgage for the purpose of releasing those rights, being purely contractual, cannot operate by estoppel to bind her, because she labored under a legal disability to make such covenant. Mrs. Hillman, not being bound by the covenants of warranty in the mortgage, is not estopped from setting up her title subsequently acquired.—*Gonzales v. Hukil*, 49 Ala. 260; *Chapman v. Abrahams*, 61 Ala. 108. If not so estopped, the title she acquired by her purchase at the foreclosure sale, did not enure to complainants. For it is upon the principle of estoppel that the doctrine contended for by complainants is made to rest.—*Chapman v. Abrahams*, *supra*, and cases cited therein; *Owen v. Bankhead*, 76 Ala. 148; *Sayre v. Sheffield Land Co.*, 106 Ala. 440. But independent of this, the estoppel attempted to be asserted by complainants as purchasers at their mortgage sale, if it existed, could be invoked successfully in a court of law and cannot alone be made the predicate for affirmative relief in a court of equity. In other words, if Mrs. Hillman had bound herself by the covenants of warranty in the mortgage, the complainants in an action of ejectment or in an action in the nature of ejectment could have invoked the estoppel and recovered the possession of the lands from her. Such estoppel, growing out of a written contract and not resting *in pais*, would have the effect to pass and vest the legal title, which, of course, can always be asserted in a court of law.—*McGee v. Eastis*, 5 Stew. & Port. 426; *Kennedy v. McCartney*, 4 Port. 141; *Bean v. Welsh*, 17 Ala. 770; *Carter v. Chaudron*, 21 Ala. 91; *Sayre v. Sheffield Land Co.*, *supra*.

It is also true, that Mrs. Hillman by the purchase, acquired the ownership or title to the lands subject to the senior mortgage held by the British & American Mortgage Co., Limited. As against that Company she has only an equity of redemption—a right to pay off and discharge the debt to it—an equity which also belongs to the complainants and which may be preserved by them in the same way. This, however, they cannot do until

a maturity of that debt. Nor can they force that company to foreclose its mortgage.—*Kelly v. Longshore*, 78 Ala. 203; *Wimberly v. Mayberry & Co.*, 94 Ala. 240; *Mims v. Cobb*, 110 Ala. 577. Nor have they a superior right to the lands as against Maxwell, Peale & Allen acquired under the mortgage executed to the latter by Mrs. Hillman to secure the purchase price agreed to be paid by her at the foreclosure sale.—*Jones v. Davis*, 121 Ala. 348; *Fouche v. Swain*, 80 Ala. 151; *Hassell v. Hassell*, 129 Ala. 326.

Affirmed.