# CHARLES B. HOSMER

## *v.*

# FRANK W. CAMPBELL *et al.*

*Filed at Ottawa May 14, 1881.*

1. DEED OF TRUST—*who is the party secured.* Where a deed of trust is given by the maker of a promissory note payable to his own order, to secure its payment, the maker of the trust deed can not be treated as a mortgagee. The note being operative and binding only after indorsement, the indorsee becomes the mortgagee, the same as if the note had been made payable to him in the first instance.

2. SAME—*innocent purchaser under, protected.* Where a trustee's deed, made upon a sale under a valid deed of trust, shows the sale to have been made in strict conformity with the power contained in the trust deed, and the purchaser has had no notice of any irregularities in the sale, his title will be protected, as respects any such irregularities, if any there were, as that of an innocent purchaser.

3. RECORDING LAW—*record not notice to a prior grantee or incumbrancer.* A mortgagee is not chargeable with notice of what the records of deeds and mortgages disclose subsequent to the making and recording of his mortgage. The registry laws have exclusive application to subsequent purchasers and creditors.

4. MORTGAGE—*sale in inverse order of alienation.* Where several tracts of land are included in the same mortgage, and there have been subsequent sales by the mortgagor, a purchaser from the mortgagor desiring that the sales under the mortgage shall be made in the inverse· order of alienation, must give actual notice of his rights before any sale is made under the mortgage. After the sale has been made without such notice having been given, he can not have any relief in respect to which tracts shall be first sold.

5. A prior mortgagee is not bound, before selling or releasing any property embraced in the mortgage, to examine the records, to ascertain whether any one will be affected by his action. The junior mortgagee or subsequent purchaser must give *actual* notice of his interests to the prior mortgagee, if he intends to insist that the property shall be sold in the inverse order of alienation, or insist that a release of a part of the property is a discharge of the mortgage indebtedness *pro tanto,* and to the extent of the value of the part released.

6. MEASURE OF DAMAGES—*on dissolving injunction.* Where the purchaser of land under a deed of trust, after serving notice on the occupants for pos-

session, is restrained by injunction from interfering with the possession, the measure of damages on dissolution of the injunction will be the rental value of the property during the period the injunction was in force.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. A. B. JENKS, and Mr. E. D. HOSMER, for the appellant:

The lots released under the prior deed of trust, by the consent of the holder of the note thereby secured, were at the time, and ever since have been, worth more than the sum due on such note. It was the duty of the holder of the note secured by the Peabody trust deed, to first exhaust all of the other lots before interfering with the lots owned by complainant.

The note secured by the Peabody trust deed was made payable to the order of James L. Campbell, himself, and there was nothing to show that any other person was interested in it, and therefore it was impossible to give actual notice to the holder of such note of the fact that a trust deed had been given to E. D. Hosmer.

The releases made by Peabody were a *pro tanto* release of the debt. See *Meacham* v. *Steel et al.* 93 Ill. 135; 2 Jones on Mort. sec. 1631; *Iglehart* v. *Crane et al.* 42 Ill. 261; *Shannon* v. *Marselis et al.* 1 Sax. Ch. 421; *James* v. *Brown,* 11 Mich. 29; *Densler* v. *McCannis,* 14 Wis. 311.

The deed of trust in this case was no more than a mortgage, and it is not assignable so as to cut out defences, and can not be enforced in violation of the equitable rights of others. *Kleeman* v. *Frisbie et al.* 63 Ill. 482; *White et al.* v. *Sutherland,* 64 id. 181.

The actual possession of the lots was constructive notice of the possessor's rights and equities. *Franz* v. *Orton et al.* 75 Ill. 100; *Smith* v. *Heirs of Jackson,* 76 id. 254; *Strong et al.* v. *Shea et al.* 83 id. 575; *Brown et al.* v. *Gaffney et al.*

28 id. 149; *Tunison* v. *Chamblin,* 88 id. 378; *Cowen* v. *Loomis,* 91 id. 132.

Messrs. HITCHCOCK, DUPEE & JUDAH, for the appellees F. W. and J. L. Campbell, Francis B. Peabody, Benj. F. Remington and James B. Story:

There is no pretence that Peabody, or Sapieha, or Story, or any one acting for them, had any actual notice, at the time of the releases by Peabody or at the time of the foreclosure, of the existence of the Hosmer trust deed.

It is settled that the record of a subsequent conveyance by a mortgagor is not notice to his mortgagee. *Matteson* v. *Thomas,* 41 Ill. 111; *Iglehart* v. *Crane,* 42 id. 262; *Guion* v. *Knapp,* 6 Paige, 36; *Hawke* v. *Snydacker,* 86 Ill. 198.

Mr. F. A. SMITH, for the appellees William Lofland and Lizzie A. Osgood:

Appellant having given no actual notice to Sapieha of the order of alienation of the different portions of the mortgaged premises prior to the giving of the several releases, and Sapieha having acted without knowledge of and without reference to the interests of appellant, the releases did not discharge, *pro tanto,* the Peabody trust deed as to the property secondarily liable, or the property in question, and therefore the foreclosure sale was not fraudulent and void on that account. *Patty* v. *Pease,* 8 Paige, 277; *James* v. *Brown,* 11 Mich. 26; *George* v. *Wood,* 9 Allen, 80; *Stuyvesant* v. *Hone et al.* 1 Sandf. Ch. 419.

Purchasers under a power, not chargeable with notice of defects or irregularities, protected. *Fairman* v. *Peck et al.* 87 Ill. 165; *Wilson* v. *South Park Comr's,* 70 id. 46; *Hamilton* v. *Lubukee,* 51 id. 415; *Gunnell* v. *Cockerill,* 79 id. 79; *Gibbons et al.* v. *Hoag,* 95 id. 45.

Mr. FRANCIS LACKNER, for the appellees Edward S. Dreyer, Henry A. Hoffman and Edward A. Koch.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The parties in interest in this litigation, both complainant and defendants, claim the title to the property that was in James L. and Frank W. Campbell, who it is conceded were at one time the owners of the same, in fee simple. On the 20th of December, 1870, the owners made a trust deed on the two lots in controversy to F. B. Peabody, to secure a note of James L. Campbell, one of the then owners, for the sum of $5000, payable to his own order nine months after date, with interest at the rate of ten per cent per annum. This deed was recorded in the proper office in Cook county, where the property is situated. Other property was embraced in this trust deed, some of which was released by the trustee, by the consent of the party holding the indebtedness secured, all of which was done prior to November 16, 1874. The value of the property released exceeded the amount of the mortgage indebtedness. It will appear in the sequel, it is under the trust deed to Peabody, defendants Osgood and Lofland deraign the title they now insist is the paramount title to the property.

On the 27th day of July, 1872, Frank W. Campbell, by deed, conveyed all his interest in the property embraced in the Peabody trust deed, to his brother, James L. Campbell. Afterwards, on the 14th day of September, 1872, James L. Campbell made a trust deed on the two lots involved in this litigation, and which were also embraced in the Peabody trust deed, to E. D. Hosmer, as trustee, to secure a note payable to Harriet H. Norton, of even date with the deed, for the sum of $2500, payable three years after date, with interest notes attached for the payment of the interest as it semi-annually became due. On default of payment of this note and interest, on the application of the holder the trustee advertised the property, as provided in the trust deed, and sold the same to Charles B. Hosmer, the complainant, for $3000, and made him a trustee's deed in the usual form, and

on its delivery it was recorded in the proper office in Cook county, on the 6th day of October, 1875. It is this title, so obtained, complainant seeks to maintain.

The trust deed made by the Campbell brothers to Peabody was made and recorded prior to the fire of October, 1871, that destroyed all the public records of Cook county. It was not re-recorded after the fire. There is the testimony of James L. Campbell, that tends to show complainant had actual notice of the existence of the Peabody trust deed when he made the loan for Norton. He says the Peabody trust deed was talked over between himself and complainant, and that the money was not paid over to him until some month or two after the loan was effected. But complainant denies any actual notice of any previous incumbrance. It is conceded he had constructive notice from the records, which showed the incumbrance and the amount of it, at the time of making the trust deed under which he derived the title to the property he now insists upon.

The note secured by the trust deed to Peabody was indorsed by James L. Campbell, and delivered to Louis Sapieha, who became the owner, for a valuable consideration. Payments of principal and interest were made upon this note, from time to time, and, as we have seen, portions of the property embraced in the trust deed were released from the deed by the trustee, at the request and by the consent of the holder of the note. Judgment was taken on this note against the maker at the May term of the circuit court, 1876, for the sum of $3761.18, being the balance due on it at that time. Nothing further seems to have been done towards the collection of this note, then in judgment, until the summer of 1879, when James B. Story purchased the judgment, and took an assignment of the same to himself. On his application, Peabody, the trustee, advertised the property embraced in the trust deed, and not previously released, to be sold to pay the balance of the note secured, upon which judgment had been taken. At the trustee's sale, Edward S. Dreyer

became the purchaser, for the sum of $2500, of the two lots now in controversy, and perhaps two other lots. As Dreyer had previously agreed to do, he conveyed the lots claimed by complainant to Benjamin F. Remington, and took a trust deed to Edward A. Koch on each lot to secure the sum of $1000, evidenced by two notes, each for the sum of $1000, payable to Henry A. Hoffman. These notes were afterwards sold by Dreyer & Co. to persons who are not parties to this bill. Before complainant's bill was exhibited, Remington had sold one of the lots to Lizzie A. Osgood and the other to William Lofland, subject to the incumbrances upon them. Both Osgood and Lofland claim to be purchasers in good faith of the property conveyed to each of them, respectively.

It is charged in the bill, that Frank W. and James L. Campbell entered into a scheme to deprive complainant of his title to the two lots so purchased by him. In furtherance of that design, it is said, one or both of them induced Story to purchase the note and judgment secured by the trust deed to Peabody, which he did, for the sum of $1000, when there was due on the judgment about $4000. After Story became the assignee of the note and judgment, it is alleged they procured the trustee to advertise the property for sale in the "Telegraph," an obscure paper printed and published in Chicago; that they procured Dreyer to bid off the property at the trustee's sale, with the agreement he would convey it to Remington, all of which, it is alleged, was done. The prayer of the bill is, that the deed made by Peabody, as trustee, to Dreyer, so far as it relates to lots claimed by complainant, and all deeds affecting them made subsequent to the making of the trustee's deed, be declared void, and removed as a cloud upon the title of complainant. The bill also contained a prayer for an injunction to restrain defendants, or any of them, from interfering with complainant's possession of the property. The answers of defendants deny all conspiracy and combinations, and allege the good faith of the transaction, so far as each defendant is concerned. Rep-

lications were filed to the answers of defendants, and a good
deal of testimony taken and submitted. On the hearing, the
court found for defendants, and dismissed complainant's bill.
Damages were also assessed in favor of the present owners of
the lots, equal in amount to the rental value of such lots
during the pendency of the injunction. Complainant brings
the case to this court, on appeal.

It is said the sale under the Peabody trust deed is fraudu-
lent and void as to complainant, and one reason assigned
is, that the releases of property embraced in the trust deed,
made by the trustee with the consent of the *cestui que trust*,
were a *pro tanto* release of the debt secured. The argu-
ment assumes that James L. Campbell was the mortgagee,
and therefore had actual notice of the second trust deed to
E. D. Hosmer, made by himself, and could not, for that
reason, rightfully release property from the first trust deed to
the obvious prejudice of the party holding the indebtedness
secured by the second trust deed. But Campbell was not the
mortgagee. The note secured was negotiable, and was, no
doubt, made with a view to raise money on it, as was done by
the sale and delivery to Sapieha. The note, for mere con-
venience, was made payable to the order of the maker, and, of
course, was not a binding obligation until it was indorsed by
him, and delivered to the assignee. The indorsee was then
the mortgagee, in the same sense he would have been had the
note been made payable to him in the first instance.

But, treating Sapieha as the mortgagee at the times the
releases were made by Peabody, with his consent, it is insisted
the evidence and the circumstances of the case show he had
notice of the trust deed to E. D. Hosmer. This is a misap-
prehension of the facts and the law of the case. There can
be no pretence he had any actual notice of the second trust
deed on a part of the property, nor was he chargeable with
notice of what the records of deeds and mortgages disclosed
subsequent to the making and recording of his trust deed. It
has been definitely settled by the decisions of this court,

that a prior mortgagee is not within the purview of the registry laws. They have, exclusively, application to subsequent purchasers and creditors. Where several tracts or parcels of land are included in the same mortgage, and there have been subsequent sales by the mortgagor, a purchaser desiring the sales under the prior mortgage shall be in the inverse order of alienation, must give actual notice of his rights. He will not be permitted to remain silent until the sale has been made, and then invoke the aid of a court of equity to undo what he might have prevented by giving timely notice of his interest in the premises. That is precisely the case here. Complainant had constructive notice, at least, of the existence of the prior trust deed, and on inquiring either of the maker of the note, or the trustee, he could readily have ascertained the name of the holder, so that notice could have been served upon him. But no effort was made to give any notice. The law makes it the duty of a subsequent purchaser of mortgaged property to give actual notice of his interests to the prior mortgagee, if he intends to insist the property shall be sold in the inverse order of alienation. But the prior mortgagee is not bound, before selling or releasing any property embraced in the mortgage, to examine the records, to ascertain if any one will be affected by his action.

This is not a new question in this court. In *Matteson* v. *Thomas*, 41 Ill. 110, it was held, a mortgagee is not required, before releasing a part of the mortgaged premises, to search the records for subsequent conveyances, and that subsequent purchasers wishing to protect themselves must bring home actual notice to the mortgagee. This doctrine was also declared in *Iglehart* v. *Crane*, 42 Ill. 261. In the latter case cited may be found a full discussion of the question.

Since complainant obtained a deed for these lots, in October, 1875, he has been in possession of them by his tenants, and it is insisted that possession of the mortgaged premises was notice to all persons dealing with the property of the rights he claimed in it. Without discussing the question of

what his possession gave notice, it is sufficient to say complainant had no possession of the premises until long after the last release was made, and, of course, his possession, whatever it was, gave no notice to the prior mortgagee of any interest of complainant in the premises before the releases of portions of the property were executed. As it is not shown by any evidence the mortgagee, Sapieha, had notice that complainant had any interest whatever in the mortgaged property, he could, if he chose, release any portion of it from the operation of the trust deed, and such release did not operate as a discharge of the mortgage indebtedness *pro tanto*, and to the extent of the value of the property released.

The charge in the bill, of conspiracy between the Campbells, Story, and others, to deprive complainant of the title he claimed to the lots in controversy, is not so clearly proved as to warrant the belief any such scheme was formed. All persons charged with complicity in the scheme disclaim any wrongful intention, and it is not clear the evidence overcomes that denial. It is certain the present owners of the lots bought in the utmost good faith, and paid a fair value for the property.

The record disclosed a title to the property perfect in Remington, subject only to the trust deeds to Koch to secure the notes of Hoffman. The trustee's deed to Dreyer showed the sale had been made in strict conformity with the power contained in the trust deed, and as neither Osgood nor Lofland had any notice, in fact, of any irregularities in the sale made by the trustee, if, indeed, any existed, the law is, their title will be protected as that of innocent purchasers. *Gunnell* v. *Cockerill*, 79 Ill. 79.

As this view of the case is conclusive of the rights of the parties, complainant was in nowise prejudiced by the refusal of the court to permit him to amend his bill so as to make the holders of the outstanding notes of Remington to Hoffman, which were secured on the property, defendants to his bill. No decree could, in any event, pass against them.

The mortgagor could make no defence to the notes, and the assignees were not bound to take any notice of the equities of third parties.  *Silverman* v. *Bullock.*

The damages assessed on the dissolution of the injunction were not excessive.  The bill charges that notice for possession of the premises had been served on the occupying tenants, and defendants were restrained, by the injunction awarded, from interfering with the possession of complainant.  It would seem the damages sustained would be equivalent to the rental value of the property during the period the injunction was in force, and that was all the court allowed.

The decree will be affirmed.

*Decree affirmed.*