GEORGE S. DOBBINS

*v.*

FRANK M. WILSON *et al.*

*Filed at Ottawa June 16, 1883.*

1. NOTICE—*to real party in interest, sufficient.* Where a party purchases a judgment, and has the same assigned to another for the use of the assignor, he controlling the same, notice by the judgment debtor of any fact to the real owner of the judgment alone is sufficient, and will bind the nominal assignee.

2. JUDGMENT LIEN—*effect of subsequent conveyance by the debtor.* A conveyance of land by a judgment debtor to another, for a valuable consideration, after the judgment has become a lien thereon, and pending an appeal, will not defeat the lien of the judgment. In such case the grantee takes title subject to the lien of the judgment, and a sale and deed made on execution under such judgment will pass the title, unaffected by the conveyance.

3. PURCHASER—*prior incumbrance—whether to be satisfied out of other property of his grantor.* If a purchaser of land from one against whom there is a judgment, desires to have other lands of his grantor first levied upon and sold to satisfy the judgment, it is his duty to give notice of his interest in the property bought by him, and to point out such other property, that the creditor may have it taken in execution.

4. SAME—*remedy when land purchased of debtor is levied on and sold instead of other lands of debtor.* Where a purchaser of land from a judgment debtor having other land amply sufficient to satisfy the judgment, gives notice to the judgment creditor of his rights, and requests him to levy upon the remaining lands of his grantor, and the creditor has the purchaser's land levied on first, and sold, the purchaser should apply to the court from which the execution issued, in apt time, to have the levy and sale set aside. His

2—107 ILL.

remedy in such case is complete at law, by motion, and it is no sufficient excuse for neglecting such remedy that the purchaser was totally blind from his youth.

5. LACHES—*as an obstacle to obtaining relief.* It is a familiar principle that a court of equity will only lend its aid to those who seek it in apt time, taking all things into consideration. In this case bill was filed to set aside an execution sale of land a day before the expiration of fifteen months from the sale, based on a ground available by motion in the court from which the execution issued, and it was *held,* that after such delay no relief could be had.

6. JUDICIAL SALE—*inadequacy of price.* Inadequacy of price at a sale under execution, where the privilege of redemption is given, is no ground for setting aside the sale in equity.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding.

Messrs. BEAM & COOK, for the appellant:

Gross inadequacy of consideration, taken in connection with other circumstances tending to impeach the fairness of the transaction, is entitled to great weight in determining the equities of parties. *Dutcher* v. *Leake,* 44 Ill. 398; *Dickerman* v. *Burgess,* 20 id. 266.

A court of equity will compel a judgment creditor to exhaust all the property held by his debtor before resorting to property purchased of the debtor, but subject to the lien of the judgment. Where a judgment creditor may collect from property that his debtor has not conveyed, but refuses or fails to do so, he may be enjoined from proceeding against the grantee of his debtor. *Hurd* v. *Eaton et al.* 28 Ill. 122; *Wise* v. *Shepherd,* 13 id. 41; *Marshall* v. *Moore,* 36 id. 321; *Iglehart* v. *Crane,* 42 id. 261; *Baird* v. *Jackson,* 98 id. 78.

Mr. EDWARD J. JUDD, for the appellees:

Complainant had a complete remedy at law by applying to the United States Court, out of which the process issued, and by not making the same is guilty of *laches,* from the results of which equity will not relieve him. *Baird* v. *Fore-*

*man,* Breese, 303; *Chittenden* v. *Rogers,* 42 Ill. 95; *Pitts* v. *Magee,* 24 id. 613; *La Salle* v. *Moore,* 1 Blackf. 226; *Stewart* v. *Marshall,* 4 Greene, (Iowa,) 75; *Cunningham* v. *Cassidy,* 17 N. Y. 276; *Hapgood* v. *Goddard,* 26 Vt. 401; *Noyes* v. *True,* 23 Ill. 503; *Raymond* v. *Paul,* 21 Wis. 535.

Mere inadequacy of price is not sufficient to vitiate a forced sale. *Skillman* v. *Holcomb,* 1 Beasley, 131; *Watt* v. *Galliard,* 67 Ill. 503.

Reichwald being an innocent purchaser, is not chargeable with any error in the judicial proceedings. *Hay* v. *Baugh,* 77 Ill. 500; *Warren* v. *Iscarian Community,* 16 id. 114; *Martin* v. *Jackson,* 27 Pa. St. 504; *Stuyvesant* v. *Hall,* 2 Barb. Ch. 151.

The equitable right to compel a creditor who has a lien on two funds to resort to the one on which he alone has a lien, is not applicable to the case at bar, because it is not a duty of the creditor to do so. He may pursue his remedies as he may see fit. It is not a right that accrues to complainant by operation of law, but an equity of which he may avail himself, at his own cost, if he does not thereby impair the security of the creditor having both liens; and a failure to assert this right in apt time is a waiver of the same, particularly where the rights of an innocent purchaser have intervened. 1 Story's Eq. Jur. sec. 633; *Hurd* v. *Eaton,* 28 Ill. 122; *Sweet* v. *Redhead,* 76 id. 377; 2 Leading Cases in Equity, 319–321.

Mr. H. H. C. MILLER, and Mr. VAN H. HIGGINS, also for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Both parties claim the title to the premises in controversy that was in Thomas S. Dobbins, as will appear from the facts to be hereafter stated. In May, 1874, Clark W. Upton, assignee, recovered a judgment in the United States District Court against Richard Gregg and Thomas S. Dobbins. That

judgment, it seems, was afterward affirmed in the Supreme Court of the United States. At an execution sale under that judgment Frank M. Wilson and George Wilson purchased the property, and received from the marshal making the sale the usual certificate of purchase, which would entitle them to a deed in case the property was not redeemed. That certificate they afterwards assigned to Van H. Higgins, and after the expiration of fifteen months from the date of the sale, the property not having been redeemed, the marshal made and delivered Higgins a deed for the property. Subsequently Higgins conveyed the property to his co-defendant, Henry G. Reichwald. It is the title so acquired that defendants insist is the better title, and should prevail.

On the 15th day of April, 1875, Thomas S. Dobbins conveyed the property to his son George Spurk Dobbins, and the grantee immediately took possession of the premises, and has since held possession by himself and his tenants. The sum stated as the consideration for the making of the deed is $13,000. It is proven, beyond all doubt, at that time and prior thereto Thomas S. Dobbins was justly indebted to the grantee in a sum in excess of the consideration stated in the deed. At the time of the making of the deed the suit of Upton against Gregg and Dobbins was pending, on appeal, in the Supreme Court of the United States, and was not affirmed in that court until April, 1877. The original bill in this case was brought by George Spurk Dobbins, against the two Wilsons, Van H. Higgins and Jesse Hildrup. It was filed one day before the expiration of fifteen months from the date of the marshal's sale of the property. By that bill complainant asked for an injunction to restrain the marshal from making a deed to the purchasers or their assignees, and the sale to the Wilsons be set aside. No injunction was awarded, and after the expiration of the fifteen months the marshal made Higgins a deed for the property. An amended bill was then filed by complainant, by leave of court, making

Reichwald, the purchaser from Higgins, a party, and also making the National Life Insurance Company a party, as having some interest in the subject matter of the litigation. Answers were filed by defendants, and the cause was heard upon bill, answers and replications, and proofs taken. The court dismissed the bill for want of equity, and complainant brings the case to this court on appeal.

The evidence is quite conclusive Higgins was the real owner of the Upton judgment against Gregg and Dobbins long before the property was sold by the marshal on the execution issued on that judgment. The assignment of the judgment to the Wilsons was made in the interest and at the request of Higgins. He had the control of the judgment, and whatever was done by the Wilsons was done for the benefit of Higgins.

One ground of relief insisted upon is, that Higgins, being the owner, and having the control of the Upton judgment, released the property in controversy from the lien of the judgment. On this point in the case the evidence is flatly contradictory. Dobbins states most positively it was the agreement the property he had conveyed to his son, the complainant in this bill, should be, and was, released from the lien of the Upton judgment, and Higgins is equally positive no such agreement was ever made. The written agreement of March 8, 1877, is ambiguous. Dobbins states it was made to release the lien of the Upton judgment, and that the judgment mentioned therein as the "Higgins" judgment, was, in fact, the Upton judgment. On the other hand, Higgins says he did not own the Upton judgment at the time of the making of that agreement, and that the "Higgins" judgment mentioned therein was a judgment in favor of Henry C. Higgins and others against Dobbins and others, which he had previously bought, and had the same assigned to him. But Dobbins says that he was not negotiating about that judgment, inasmuch as he expected the railroad company with

which he was and had been connected would pay it,—that he was talking about the Upton judgment, and that it is the same judgment mentioned in the agreement. So unsatisfactory is the testimony on this branch of the case, it can hardly be said the evidence so preponderates in favor of complainant that it would warrant a decree in his favor on that ground. It is most singular the parties did not make their written agreement in this respect more definite and certain. So far as this court can know, these witnesses are of equal respectability, and it can not say the testimony of one preponderates over that of the other. No witnesses other than Higgins and Thomas S. Dobbins testified touching this point in the case, and there are few, if any, extrinsic facts that tend to strengthen the testimony of either party. It may, therefore, be fairly said the testimony as to this fact in the case is equally balanced, and hence it will not warrant a decree for complainant.

But the point which seems to be most confidently relied on for relief is, that at the time the judgment in favor of Upton was rendered, Dobbins, the judgment debtor, had other real property than that which he afterwards conveyed to complainant, upon which the judgment was a lien; that it was many times the value of the amount of the judgment, and that before the levy and sale on the execution issued on the judgment, Dobbins, the debtor, informed Higgins and the other defendants interested in the execution that he (Dobbins) had sold the property in controversy to his son, for value, and that he then owned other unincumbered real property subject to the lien of the judgment, and requested defendants to cause such other property to be first levied on and sold before resorting to the land sold to complainant, but that they refused to do so. It will be seen, on looking into the record, the evidence on this branch of the case is also contradictory. It may be conceded that notice to Higgins, if any was given, would be sufficient, whether the Wilsons

had notice or not.    It is very clear the Wilsons were simply acting for Higgins, and whatever would affect Higgins with notice would be all the notice required to be given.    The execution debtor is positive he gave notice to Higgins that he had other real property that was unincumbered and was subject to the lien of the judgment.    Higgins, however, denies that Dobbins gave him any description of any other lands upon which he could cause the execution to be levied, but that he refused to disclose the description of any other lands.    There is, and can be, no doubt the property in controversy was subject to the lien of the Upton judgment.    It was not conveyed to complainant until long after the judgment became a lien on the grantor's property.    It is unnecessary to say that a purchaser acquiring title to land after judgment against his grantor, will take it subject to such lien. It will be presumed complainant took title to the lots in controversy knowing the same were subject to the lien of the Upton judgment.    If, then, the judgment debtor had other property that was unincumbered and subject to the lien of the judgment, it was the duty of the purchaser to point out such property, that the creditor might seize it.    That was not done, either by complainant or any one on his behalf.    On this subject the law is as stated in *Hosmer* v. *Campbell,* 98 Ill. 572, where it is said the law makes it the duty of a subsequent purchaser of mortgaged property to give actual notice of his interests to the prior mortgagee, if he intends to insist the property shall be sold in the inverse order of alienation. He will not be permitted to remain silent until the sale has been made, and then invoke the aid of a court of equity to undo what he might have prevented by giving timely notice of his interest in the premises.

But if it be conceded notice was given to Higgins that the debtor had other property subject to the lien of the judgment controlled by him, and that he refused to levy on it, but chose to levy on complainant's property first, complainant ought to

have applied to the court out of which the execution issued, to set aside the levy and sale, if a sale had been made. In that court he had a full and complete remedy. Neglecting the remedy the law afforded for speedy redress, he can not invoke the aid of a court of equity. Some excuse is shown by the evidence for the want of personal diligence on the part of complainant. He is "totally blind, and has been since he was fifteen years old;" but he could have procured others to act for him, and that he should have done. As was said in *Hay* v. *Baugh*, 77 Ill. 500, a party failing to avail of the remedy by motion to set aside the alleged wrongful sale of his property, "should not be permitted, after the time for a redemption expires, to set it aside, unless he can show a strong case of fraud, wrong or oppression. A defendant has no right to lie by and permit the purchaser to obtain a deed, then have the action of the officer abrogated, thus delaying the creditor in the collection of his debt, when, by applying to one of the two terms of the circuit court occurring after the sale and before the right of redemption expires, he could obtain complete justice." Complainant has shown no sufficient reason why he did not apply to the court out of which the execution issued, to have the action of the marshal making the levy and sale set aside, or if, for any reason, it was desirable or necessary to proceed by bill, why he did not bring his bill sooner. He has slept too long on his rights, if he had any, to invoke the aid of a court of equity. It is a familiar principle that equity will only lend its aid to those that seek it in apt time, all things considered. That has not been done in this case.

Some testimony may have been admitted that was improper, but, in the view taken of the case, it is not seen how it injuriously affected complainant. It is also insisted the cross-examination of the witness Dobbins, touching the contents of an affidavit made in another case, and which was not then before him so that he could refresh his recollection,

was so improper as to be error.   Concerning the subject matter of the cross-examination, it may be said it was not relative to any matter at issue, and it seems impossible the mind of the court was influenced by it in coming to a conclusion.

It is made a point for relief the property was sold for an inadequate price.   The proof is, it was sold at the marshal's sale for $2700, and that shortly after Higgins obtained a deed for it he sold it to his co-defendant for $18,000.   No doubt the amount bid at the marshal's sale was very much less than the property was really worth, but of that complainant has no just reason to find fault, as it did not affect him injuriously.   It was sold with the privilege of redemption, and had complainant chosen to avail of that privilege, it is obvious the less that was bid upon the property the more favorable it was to him.   A careful consideration of the whole record discloses nothing that the law will take hold of to afford complainant relief.

The decree of the circuit court will be affirmed.

*Decree affirmed.*