## ALEXANDER CLARK

*v.*

## EMMA J. GLOS *et al.*

*Opinion filed June 17, 1899—Rehearing denied October 4, 1899.*

1. MERGER—*when judgment is not extinguished by merger.* Where, pending appeal, a judgment debtor sells part of the property subject to the lien of the judgment, and afterwards sells other property also subject thereto to another party who subsequently obtains the judgment by assignment, the judgment is not extinguished by merger, so as to prevent one purchasing the judgment from the assignee from enforcing it against the property first sold.

2. SAME—*when assignment of charge to owner of property does not work merger.* The rule that an assignment of an encumbrance or judgment to the owner of the property works a merger thereof, does not apply to a grantee of the mortgagor or judgment debtor unless the grantee takes the conveyance subject to the mortgage or judgment and agrees to pay it as part of the consideration.

3. JUDICIAL SALES—*when equity will not interfere with purchaser from holder of sheriff's deed.* A court of equity will not interfere with a *bona fide* purchaser from the holder of a sheriff's deed, unless such purchaser can be charged with notice of fraud or other inequitable conduct connected with the sheriff's sale.

4. SAME—*voidable sale cannot be collaterally attacked by stranger to record.* Where the court rendering judgment is not called upon to set aside a sale thereunder by either the defendant to the execution or his grantee who held the title when the sale was made, a court of equity will not inquire into or set aside the sale at the instance of a stranger, upon collateral attack, for defects which merely render the sale voidable.

5. SAME—*failure to sell in inverse order of alienation is a mere irregularity.* The failure to sell property subject to the lien of a judgment in the inverse order of the alienation of the several parcels by the judgment debtor is a mere irregularity which does not render the sale absolutely void, and an objection to the sale on that ground may be lost by delay.

6. SAME—*when sale will not be set aside for inadequacy of price.* A sale under execution will not be set aside for mere inadequacy of price unless the same is such as to amount to evidence of fraud.

7. SAME—*objections to sale should be made in apt time by motion to set aside.* Application to set aside a judicial sale for irregularities should be made by motion, before the time of redemption has expired, in the court from which the execution issued; and where the judgment debtor, or his grantee, fails to avail himself of such rem-

edy, equity will not grant relief unlèss he makes a strong case of fraud, wrong or oppression.

8. SAME—*when objections to judicial sale are waived.* Objections to an execution sale, based on irregularities, must be treated as waived when not urged until twenty years after the sale, during which time the property has passed into the hands of a *bona fide* purchaser.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

This is a petition to establish title under the Burnt Records act, filed on December 31, 1895, by the appellee, Emma J. Glos, against the appellant, Alexander Clark, Esther J. Clark, Jacob Glos, J. A. Shellberg and others, and all whom it may concern. The property, title to which is sought to be established, is described as follows: Lots 1, 2, 3, 15, 16, 17 and 18 in block 5 in Merrill Ladd's addition to Evanston, and lot 14 in block 1 in Iglehart's addition to Evanston in Cook county. A general demurrer was filed to the original petition and sustained; and afterwards, on March 9, 1896, an amended petition was filed, setting forth the full chain of title from the government. Answers to the amended petition were filed by the appellant, Alexander Clark, and by Esther J. Clark, Jacob Glos and J. A. Shellberg, the latter being a tenant merely of the appellant. Replications were filed to these answers.

On June 22, 1898, the appellant, Alexander Clark, filed a cross-petition, admitting the chain of title from the government down to Ladd, under whom the parties to this litigation claim. In his cross-petition, the appellant alleged, that he was the owner of the property in question, and was in possession thereof, and prayed that the title to said property be established in him, and for general relief. To the cross-petition answers were filed by Emma J. Glos, the appellee, and Jacob Glos, to which replications were filed. The cause was dismissed as to a large number of defendants to the amended petition,

and was then referred to a master in chancery to take proofs, and report the same, with his conclusions thereon, to the court. Objections were filed to the master's report and overruled, and the same were ordered to stand as exceptions to the report.

On August 10, 1898, final decree was entered by the court, overruling all the exceptions to the master's report, except one not involving any material question in the case; and finding that the appellee, Emma J. Glos, is the owner in fee of an undivided five-eighths of the property in question, and that appellant, Alexander Clark, is the owner of the other undivided three-eighths thereof; that all other claims and titles are void; that the said respective interests of Emma J. Glos and Alexander Clark are confirmed and established; that Emma J. Glos is the owner of certain tax titles; that her said tax deeds are void, but that she is entitled to be reimbursed by appellant, Clark, on account of payments, made in the matter of said tax titles, to the extent of three-eighths of the principal thereof with interest at six per cent per annum from the time of the payments to July 1, 1891, and five per cent after that date; that the total amount of payments together with interest, so made by her, is $435.95, and she is entitled to be reimbursed by said Clark to the extent of $163.47; that Jacob Glos is the owner of certain tax deeds, which are void, and is entitled to the amount paid out by him for taxes and assessments with interest to the amount of $576.24, of which Emma J. Glos should pay five-eighths, or $360.15, and Alexander Clark three-eighths, or $216.09; that appellant has been in the exclusive possession of the premises since September 1, 1890, receiving the rents and profits thereof; that he has no valid title thereto, except the title to an undivided three-eighths thereof, conveyed to him on December 5, 1894, by Esther J. Clark; that, before and since said date, said Clark has held said premises adversely to Emma J. Glos as tenant in common, and has ousted her from participa-

tion in the rents and profits from the same. The decree then orders, that appellant let Emma J. Glos into possession as a tenant in common in the proportions above set forth, and that relief be granted upon the payment of the taxes in the proportions and manner above stated; and that the appellee, Emma J. Glos, pay five-eighths of the costs, and Alexander Clark three-eighths thereof, and that Jacob Glos recover his costs from said Emma and Alexander in said proportions.

From this decree Emma J. Glos and Alexander Clark each prayed a separate appeal. Appellant has assigned errors, and appellee, Emma J. Glos, has assigned cross-errors.

On November 27, 1874, Merrill Ladd, as is conceded by both parties, was the owner in fee simple of the eight lots above described; on that day the board of trustees of township 41, range 14 in Cook county, obtained a judgment for $5000.00 in the superior court of Cook county against Merrill Ladd, inpleaded with Julius White and Samuel Green. From this judgment an appeal was taken to the Supreme Court of the State, where the judgment was affirmed, as will be seen by reference to the case of *Ladd* v. *Board of Trustees*, 80 Ill. 233. On July 24, 1876, the order of affirmance of the Supreme Court was filed in the superior court, and the cause was reinstated in the latter court. Several executions were issued upon the judgment and were levied upon certain personal and other property, and, by the amounts realized upon such executions, and by payments made, a large part of the judgment was paid off; but a considerable portion thereof, amounting to between $1200.00 and $1300.00, was still unpaid on October 13, 1876.

On October 13, 1876, the township trustees, plaintiffs in the judgment, assigned the judgment to John O. Pierson. On November 27, 1876, Pierson caused an execution to be issued upon the judgment, but the same was returned without sale of any property. On January 5,

1877, the judgment was assigned by Pierson to Charles B. Hosmer. The assignments of the judgment, as above mentioned, were duly entered upon the writs of execution, and filed of record in the office of the clerk of the court issuing said writs.

On December 12, 1877, Charles B. Hosmer, the assignee of the judgment, caused a writ of *venditioni exponas* and writ of execution to be issued upon the judgment; and the same was levied by the sheriff upon the eight lots above described, which were the property of Merrill Ladd, the judgment debtor, at the time the judgment was rendered against him. Under the writ thus issued on December 12, 1877, the lots in question were sold on February 11, 1878, to Charles B. Hosmer, to whom the sheriff issued a certificate of sale. No redemption was made by Ladd, or any of his grantees. Thereupon, on June 26, 1879, a sheriff's deed was executed and delivered to Charles B. Hosmer, the purchaser at the sheriff's sale.

Charles B. Hosmer, and his son, Edward D. Hosmer, were partners, as lawyers and dealers in real estate, under the firm name of C. B. Hosmer & Son. Although the sheriff's deed was taken in the name of Charles B. Hosmer, he and Edward D. Hosmer owned each an undivided one-half interest in the lots, as being equal partners; and the title was taken in the name of Charles B. Hosmer merely as matter of convenience in the making of deeds, Charles B. Hosmer being a widower, and Edward D. Hosmer having a wife. On March 1, 1888, Charles B. Hosmer executed a quit-claim deed, conveying the undivided half of said lots to Edward D. Hosmer, his son.

On January 3, 1891, Charles B. Hosmer died testate, and his will was admitted to probate in the probate court of Cook county. By his will he divided his estate into four equal shares, one share of which he gave to his son, Arthur B. Hosmer, one share to the said Edward D. Hosmer, one share to Edward D. Hosmer, as trustee for his daughter, Ella L. Ferrando, and one share to Edward D.

Hosmer, as trustee for his daughters, Charlotte and Rebecca T. Hosmer, with full power in said Edward D. Hosmer to sell and convey the real estate devised, as such trustee. An inventory was filed in the probate court of Cook county in the estate of Charles B. Hosmer on February 10, 1891, in which an undivided one-half of the premises here in controversy was included and described, as belonging to the estate of Charles B. Hosmer.

The decree finds that, by the will of Charles B. Hosmer, Edward D. Hosmer became the owner of one-fourth of one-half of said lots, to-wit, one-eighth thereof; Arthur B. Hosmer became thereby entitled to one-eighth thereof; Edward D. Hosmer, as trustee of Ella L. Ferrando, became entitled to one-eighth thereof, and Edward D. Hosmer, as trustee of Charlotte and Rebecca T. Hosmer, became entitled to an undivided one-eighth thereof. Upon the theory that Edward D. Hosmer obtained an undivided one-half of the property by the quit-claim deed, made to him by his father in his lifetime, and that he obtained one-eighth thereof under the will of his father, the decree finds that Edward D. Hosmer was the owner of an undivided five-eighths of the lots.

On June 8, 1891, Edward D. Hosmer executed a quit-claim deed to Emma J. Glos, the appellee, conveying all interest in said property.

On February 13, 1875, while the judgment against Ladd was pending on appeal in the Supreme Court, Ladd executed a deed of the eight lots above described to Paul Thurlow, a resident of Philadelphia, Pennsylvania. Afterwards, on August 27, 1890, Paul Thurlow, for a consideration of $100.00, executed a quit-claim deed of said eight lots to the appellant, Alexander Clark, which said deed was recorded on October 2, 1890. On August 27, 1890, the appellant took possession of the premises. On November 23, 1894, Edward D. Hosmer, as trustee as above stated, executed a quit-claim deed of the lots to Esther J. Clark; and about the same time Arthur B. Hosmer in

180—36

his own right executed a quit-claim deed thereof to Esther J. Clark. On December 5, 1894, Esther J. Clark conveyed the interest, so acquired by her in the property, to the appellant, Alexander Clark.

The theory of the decree is, that, by his deed as trustee, Edward D. Hosmer conveyed two-eighths of the property to Esther J. Clark, and that Arthur B. Hosmer conveyed to her one-eighth thereof, and that, by her deed to the appellant, the latter became the owner of an undivided three-eighths of the property in question.

In March or April, 1875, Merrill Ladd conveyed certain pieces of property, other than the lots here in controversy, to John O. Pierson, which were subject to encumbrances for large amounts, and the payment of which encumbrances was assumed by Pierson, the grantee. In 1880 Pierson executed quit-claim deeds of three of the last named properties to the Connecticut Life Insurance Company of Hartford, Connecticut, for which he was acting as agent.

During the period from February 13, 1875, when he obtained his deed from Ladd, to August 27, 1890, when he made the deed to the appellant, Thurlow paid no taxes upon the eight lots here in question, and took no possession of the same; but it appears that the property was subdivided in 1872, and Ladd then built a sidewalk in front of block 5, and streets were thrown up and graded on three sides of it, and a fence was erected on three sides, but not on the fourth side. The fences around the three sides of block 5 remained in fairly good condition up to 1881, and at that time had decayed; on August 27, 1890, the fence still stood on one of the three sides of the property, but was mostly gone on the other two sides. In the fall of 1890 appellant moved a small house upon the property claimed to be worth $1500.00. The fences in question were around the lots in block 5, but there is nothing to show that any fences were around any part of lot 14 in block 1 in Iglehart's addition.

ALEXANDER CLARK, *pro se.*

ENOCH J. PRICE, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Two main questions are presented by the record before us. One relates to the title acquired through the sheriff's sale under the judgment against Ladd. The other has reference to the extent of the interest, acquired by the appellee under the deeds executed by Charles B. Hosmer and Edward D. Hosmer.

The appellee claims, that she acquired a good title to the property through the sheriff's deed executed to Charles B. Hosmer, the purchaser at the sheriff's sale.

*First*—The first objection made by the appellant to the title, derived from the sheriff's sale, is that, when that sale was made, the judgment had been extinguished by merger, and that, therefore, the sale under it was void. This contention grows out of the following state of facts: In March or April, 1875, Ladd, the judgment debtor, conveyed to Pierson certain lands other than the lots here in controversy. Before Ladd conveyed these lands to Pierson, to-wit, on February 13, 1875, Ladd had conveyed the eight lots here in controversy to Thurlow. On October 13, 1876, the township trustees assigned the judgment against Ladd to Pierson. At that time the judgment was a lien upon the lots here in controversy, and also upon the lots conveyed to Pierson subject to the encumbrances upon the latter. It is claimed by the appellant that, when Pierson, holding the title to the land conveyed to him by Ladd, took an assignment of the judgment against Ladd, he occupied the position of both debtor and creditor, and thereby there was an extinction of the judgment, and a merger, which made a sale under the judgment absolutely void.

The trouble with the contention of the appellant upon this point is, that Pierson did not obtain from Thurlow, or from Ladd, a conveyance of the particular lots here in controversy. If Pierson had obtained from Thurlow, the grantee of Ladd, a deed of the eight lots, involved in this suit, and thereafter had procured an assignment to himself of the judgment, which was a lien upon those lots, it would be a serious question whether a merger had not taken place. The present case would then be brought within the doctrine laid down in the case of *Donk* v. *Alexander*, 117 Ill. 330, which counsel for appellant refers to and relies upon. The question here presented, however, is whether, where a judgment is a lien upon two pieces of land, a party who has taken a deed from the judgment debtor of one of the pieces of land, and then afterwards obtains an assignment of the judgment to himself, can enforce the judgment against the piece of land, the title to which remains in the judgment debtor, (or a prior grantee from him), and of which such party did not obtain a deed to himself.

Black, in his work on Judgments, says: "Since a judgment is a general lien upon all the debtor's real estate, it does not merge when the judgment creditor acquires title to a particular portion of such lands, but may, in ordinary cases, be enforced against the remaining lands. In case the creditor should become the owner of the only piece of land belonging to the debtor, there would probably be a merger of the lien," etc. (1 Black on Judgments, sec. 480). In support of the text the writer refers to the case of *Caley* v. *Morgan*, 114 Ind. 350. In the latter case it was held, that the purchaser of land is not estopped from buying a judgment against his grantor, existing at the time of the conveyance, and enforcing it against other lands, owned by the latter at the time of the rendition of the judgment or acquired by him afterwards; and that, in such case, there is no merger of the lien. The facts in the case of *Caley* v. *Morgan*, *supra*, are some-

what complicated, and will not be here set forth; but a reference to that case, and to the cases therein referred to, will show that the rule laid down by Black is supported by authority.

It must be remembered, however, that here the judgment was not enforced against the lands in question by Pierson, but it was enforced by Charles B. Hosmer, to whom Pierson assigned the judgment. There is no evidence in the record that Hosmer, when he procured execution to be issued upon the judgment and levied upon the lots in question, had any knowledge or notice that Ladd had conveyed other portions of his property to Pierson. "Mergers are not * * * favored either in courts of law or in equity." (15 Am. & Eng. Ency. of Law, p. 314). It has been said that, in order to effect a merger, there must be at least two estates in the same property, which have vested in the same person. (Ibid.) Two estates in the lots here in controversy never vested in Pierson, for, although, when he took an assignment of the judgment, it may be said that he thereby acquired a lien upon the lots, yet he did not acquire the fee simple title thereto, because such title was in Thurlow, who obtained it by deed from Ladd on February 13, 1875, and never parted with it, until he executed a quit-claim deed to the present appellant on August 27, 1890. It has also been said that, at law, when a greater and lesser, or a legal and equitable estate coincide in the same person, the lesser or the equitable estate is immediately merged and annihilated. (Ibid.) But, here, the lesser estate, to-wit, the lien of the judgment, or the charge upon the land, was, after the assignment, in Pierson, but the fee simple title was in Thurlow, and, therefore, the greater and lesser estate did not coincide in the same person; so that the lesser estate, to-wit, the lien of the judgment, was not immediately merged and annihilated. It is also a well settled rule that, in equity, it depends upon the intention of the parties and a variety of other circumstances,

whether or not a merger takes place. Equity will prevent or permit a merger, as will best subserve the purposes of justice, and the actual and just intention of the parties. The fact, that Pierson executed an assignment of the judgment to Charles B. Hosmer, shows that he intended to keep it alive, and had no intention of causing its extinguishment by a merger. "If, after the ownership and the charge have become united, the party does any act which clearly shows that he regards the encumbrance as still subsisting, this is strong even if not conclusive evidence of an intent that there should be no merger." (2 Pomeroy's Eq. Jur. sec. 792, note 2). Again, "an assignment of a mortgage to a grantee of the mortgagor, unless he has expressly assumed to pay it and thus made himself the principal debtor, does not generally create a merger." (2 Pomeroy's Eq. Jur. sec. 793). Here, there was an assignment of the judgment to Pierson, a grantee of the judgment debtor, but there is no evidence that Pierson expressly assumed to pay the judgment, and thereby made himself the principal debtor. The rule, that an assignment of the encumbrance or charge to the owner of the property works a merger thereof, does not generally apply to a grantee of the mortgagor or judgment debtor, unless the latter takes a conveyance of the lands subject to the mortgage or judgment, and expressly assumes and promises to pay it, as a part of the consideration; because he is thereby made the principal debtor, and the land is the primary fund for payment, so that, if he pays off the charge, it becomes extinguished. (2 Pomeroy's Eq. Jur. sec. 797). In *Donk* v. *Alexander*, 117 Ill. 330, where the judgment of the Appellate Court was affirmed, we stated that we found no reason to disagree with the Appellate Court in its conclusions as to the law and the facts announced in its opinion; and, when we refer to the opinion of the Appellate Court in that case, we find that the decision of the court is placed mainly upon the obligation

of the assignee of the judgment to pay it. (*Donk Bros. & Co. v. St. Louis Glucose and Grape Sugar Co.* 17 Ill. App. 369).

Before the lots in controversy here were sold under the judgment assigned to Charles B. Hosmer, it may be that Thurlow could have raised the question of Hosmer's right to have execution on the judgment. But the assignee of a judgment may enforce the same. When a person pays a judgment creditor the amount of his judgment against another and takes an assignment, the judgment is not necessarily thereby satisfied. It still remains in force against the debtor and beneficially in favor of the purchaser thereof; and the latter may issue the process of the law in the name of the judgment creditor to obtain satisfaction. (*McHany* v. *Schenk*, 88 Ill. 357). Upon the facts here presented, the sale, made under the judgment at the instance of Charles B. Hosmer, was not void, but at most only voidable; consequently, the sale is not now open to collateral attack. (*Caley* v. *Morgan, supra*).

Although Thurlow obtained his deed from Ladd, the judgment debtor, on February 13, 1875, he remained inactive and silent for over fifteen years, until he executed a quit-claim deed to appellant on August 27, 1890; and appellant made no application to have the sale set aside until the filing of his cross-petition herein on June 22, 1898, more than twenty years after the sale took place. An application to set aside a sheriff's sale for an irregularity, which makes the sale merely voidable, should be made at an earlier period than it has been made in the case at bar. Thurlow could have applied by motion to the court, rendering the judgment, to set the sale aside; he not only failed to do so, but, after the sale was made and the sheriff's deed was executed to the purchaser, he neglected to file a bill in chancery to set the same aside for the long period of time already referred to. It may not be ground for denying equitable relief, that the judgment debtor or his grantee has omitted to apply by motion to have an irregularity of this character corrected

until the time for redemption has expired, still a much stronger case must be made to authorize the court to grant the relief, when there has been so long a delay as is shown by the present record. No excuse is here given, why the application to set the sale aside was not made at an earlier date. Where a judgment debtor, or a grantee holding title from him at the time of a sheriff's sale, shows no excuse for his delay in objecting to the sale, until after it has been consummated and the purchaser thereat has made conveyance to a third party buying in good faith, such debtor or grantee is not entitled to have the sheriff's sale set aside. (*Richey* v. *Merritt*, 108 Ind. 347).

So far as the present record shows, the appellee was a *bona fide* purchaser of the property from Edward D. Hosmer, holding under the purchaser at the sheriff's sale. Appellee obtained her deed on June 8, 1891; and, being an innocent purchaser without notice of the irregularity here complained of, she was not affected thereby. A court of equity will not interfere with a *bona fide* purchaser from the holder of a sheriff's deed, unless such purchaser can be charged with fraud or other inequitable conduct connected with the sheriff's sale, or, at any rate, can be charged with notice of such inequitable conduct. (*Hay* v. *Baugh*, 77 Ill. 500; *McHany* v. *Schenk*, *supra*). There is no evidence here showing any fraud on the part of the appellee. Therefore, whatever remedy Thurlow may have had against the original purchaser at the sheriff's sale, if he had made his application in time to have the same set aside, he is without remedy at this late day against the appellee.

Moreover, as the court rendering the judgment was not called upon, either by the defendant in the execution or by the purchaser from the judgment debtor who held the title to the property when the sale was made, to set the proceeding aside, such proceeding cannot be disturbed at the instance of a stranger upon a collateral attack. Here, the appellant, as holding under a deed executed to

him by Thurlow, is a stranger to the record, and, therefore, at his instance, a court of equity will not inquire into and declare a sale invalid for a defect, which, at most, made it voidable only, and not absolutely void. (*Dobbins* v. *Wilson*, 107 Ill. 17; *Durham* v. *Heaton*, 28 id. 264).

*Second*—It is claimed, on the part of the appellant, that the sale of the lots under the judgment was invalid, because the lots or tracts, upon which the judgment was a lien, were not sold in the inverse order of alienation. It is well settled, that a court of chancery may compel a judgment creditor to exhaust all the property held by his debtor, before he shall resort to property sold by the debtor, but subject to the lien of the judgment. (*Hurd* v. *Eaton*, 28 Ill. 122). So, also, the judgment creditor may be compelled to sell a tract last sold by the judgment debtor, before selling a tract first transferred by the judgment debtor, where both tracts are subject to the lien of the judgment. If the doctrine in relation to sales in the inverse order of alienation be applied to the facts of the present case, then a court of chancery might have compelled Hosmer, the assignee of the judgment, to first make sale of the land transferred in March or April, 1875, by Ladd to Pierson, before making sale, under the judgment, of the lots here involved, which were theretofore transferred by Ladd to Thurlow, to-wit, on February 13, 1875. This doctrine, however, is subject to the qualification, that the judgment creditor had notice of the fact of alienation. If a purchaser of land from one, against whom there is a judgment, desires to have other lands of his grantee first levied upon and sold to satisfy the judgment, it is his duty to give notice of his interest in the property bought by him, and to point out such other property, that the creditor may have it taken in execution. (*Dobbins* v. *Wilson*, 107 Ill. 17; *Richey* v. *Merritt*, 108 Ind. 347). Where several tracts of land are included in the same mortgage, and there have been subsequent sales by the mortgagor, a purchaser from the mortgagor desir-

ing that the sales under the mortgage shall be made in
the inverse order of alienation must give actual notice of
his rights before any sale is made under the mortgage,
and, after the sale has been made without such notice hav-
ing been given, he can have no relief. (*Hosmer* v. *Campbell*,
98 Ill. 572). The notice here required must be actual, and
not constructive notice. (*Hosmer* v. *Campbell, supra; Matte-
son* v. *Thomas*, 41 Ill. 110). As has already been stated,
there is no evidence here, that Charles B. Hosmer, at the
time of the sale made by the sheriff under the judgment
assigned to him, had any notice of the transfer of other
property in March or April, 1875, by Ladd to Pierson.
It was the duty of Thurlow, if he had knowledge of such
transfers by Ladd to Pierson, to give notice thereof to
the sheriff, or to Hosmer, before the lots were sold at
sheriff's sale. At any rate, he should have applied in apt
time to the court, from which the execution issued, to
have the levy and sale upon these lots set aside. His
remedy in such case is complete at law by motion. (*Mor-
gan* v. *Evans*, 72 Ill. 586; 2 Freeman on Executions, sec.
309). In *Watt* v. *McGalliard*, 67 Ill. 513, where a decree was
entered against a party for the payment of money and
made a charge upon two tracts of land then owned by
him, either one of which was sufficient to have satisfied
the debt, and, after decree and before sale, such party
sold and conveyed one of the tracts to A, who never gave
any notice of his purchase, and the master in chancery
sold the same in satisfaction of the decree and costs, etc.:
it was held, on bill by the heirs of A to set aside the sale
and master's deed, and for leave to redeem, that the ob-
jection that the other tract was not first sold came too
late after the sale and its confirmation. Certainly, this ob-
jection comes too late here, inasmuch as Thurlow waited
twelve years after the sheriff's sale before executing a
quit-claim deed to the appellant, and the appellant him-
self waited eight years longer before asking the relief,
which he prays for by his cross-petition in this case.

The failure to make the sale in the inverse order of alienation constituted such an irregularity, as did not make the sale void, but merely made it voidable; and, therefore, the application to set it aside should have been made at an earlier date. It is a reasonable inference that Thurlow had notice in due time of both the levy upon and sale of his property, and having made no objection to its sale until after the lapse of so long a period, he waived his right to have it set aside, on the ground that the proper order of priority was not observed in making the levy and sale. "Where a party has notice in time to prevent, by injunction or other proceeding, a sale of his land until parcels subsequently disposed of by the judgment defendant have been exhausted, but makes no objection until after the sale has been consummated, and shows no excuse for not doing so, he is estopped from asking to have the sale set aside on the ground that the proper priority was not observed." (*Richey* v. *Merritt*, 108 Ind. 347).

*Third*—The appellant also objects to the sale upon two other grounds: First, that the lots here in controversy were sold by the sheriff *en masse;* and second, that there was great inadequacy in the price of the lots realized at the sale.

It does not appear here that the sale of the lots was *en masse.* On the contrary, we find that the lots were sold separately, as required by the statute. In the return, made by the sheriff upon the writ of execution and *venditioni exponas*, he states, that he sold, at public vendue, "to the highest and best bidder at said sale the property levied upon as aforesaid for the sum of $1115.00 as follows: Lots 19 and 20 marked 1 above for $25.00 each; seven lots marked 2 above for $5.00 each; lot 14 marked 3 above for $10.00; ten acres marked 4 above for $500.00; four lots marked 5 above for $130.00 each." The seven lots marked 2, and lot 14 marked 3, are the lots here in controversy; and the sheriff, in his return, states that he

sold them separately each for so much. Again, in the certificate of sale, issued by the sheriff to the purchaser at the sheriff's sale, the sheriff states that he sold at public vendue "all the right, title and interest of said defendants in and to the following described tracts or lots of land, to-wit, lots 19 and 20 in block 25 village of Ravenswood for $25.00 each; lots 1, 2, 3, 15, 16, 17 and 18 in block 5 of Merrill Ladd's addition to Evanston for $5.00 each; lot 14 in block 1 of Iglehart's addition to Evanston for $10.00; the south ten acres of the north-east quarter of the north-west quarter of section 5, township 40, north, range 14, east of the third principal meridian for $500.00; lots 15, 16, 17 and 18 in block 32 in Evanston for $130.00 each, all of the above in Cook county, Illinois, to Charles B. Hosmer for the sum of $1115.00, said sum being the highest and best bid offered for said tracts or lots of land, the same having been first offered in separate tracts or lots without receiving any bid or bids therefor or for any part thereof."

The statement in the certificate of sale is inconsistent and contradictory. The sheriff first herein says, that these lots were sold each for so much money, and then that they and other property were sold for an aggregate amount, having first been offered in separate lots without receiving any bid or bids therefor. This inconsistency or contradiction in the certificate of sale does not exist in the return upon the writ of execution and *venditioni exponas.* The master, to whom the cause was referred in the court below, states in his report that the inconsistency in the sheriff's certificate of sale arose from the careless use of a printed form, from which the statement of a sale for an aggregate amount without receiving separate bids was not erased. It was unquestionably the duty of the officer under the statute to offer the lots for sale separately. The presumption is, that a public officer does his duty in the absence of evidence to the contrary. Where, as here, there are two contradictory statements,

one as to the performance of an official duty in accordance with the law, and the other as to its performance otherwise than as directed by the statute, the court will indulge the presumption in favor of a compliance with the law. We are, therefore, of the opinion, that the sheriff's certificate of sale was intended to make the statement, that the lots were offered and sold separately. One of the objects of the requirement, that the lots should be sold separately when they are susceptible of division, is that, thereby, the owner may be enabled to redeem a particular lot by paying the amount, for which it was sold, without exercising his right of redemption as to the whole property. Here, the return on the execution and the certificate of sale both show, that bids were made separately on the lots and were itemized therein; and, thereby, Thurlow was enabled to exercise his right of redemption upon each lot separately.

So far as the inadequacy of price, for which the sale was made, is concerned, it is well settled that a judicial sale will not be set aside for inadequacy of price, unless the same is such as to amount to evidence of fraud. (*Barling* v. *Peters*, 134 Ill. 606). There are here no circumstances, tending to impeach the fairness of the sheriff's sale and the good faith of Charles B. Hosmer, the purchaser; and, therefore, mere inadequacy of price is not a sufficient cause for setting aside the sale.

Objections to a judicial sale upon the ground that the property levied upon was sold *en masse*, and upon the ground that the prices realized were inadequate, are objections which, at most, merely make the sale voidable. Consequently, applications to have the sale set aside because of such objections should be made by motion, before the right of redemption has expired, in the court from which the execution was issued. Where the judgment debtor or his grantee, thus having an ample remedy by motion to set aside the sale, fails to avail himself of it, he should be required to show a case, which appeals

forcibly to equity for relief before the sale will be set aside. When the time of redemption has expired, an application to set the sale aside will not be entertained, unless the applicant can show a strong case of fraud, wrong or oppression. The judgment debtor or his grantee has no right to lie by and permit the purchaser to obtain a deed, and then have the action of the officer in making the sale and deed abrogated. Irregularities such as are here complained of are such as the judgment debtor himself may insist upon, and, therefore, he may waive them by too great delay in applying to have the sale set aside. When he fails to act promptly, he will be presumed to have waived such irregularities. There can be no question of such waiver in the present case where there has been so great a lapse of time and so long a delay. (*Hay* v. *Baugh*, 77 Ill. 501; *Noyes* v. *True*, 23 id. 503; *Dobbins* v. *Wilson*, 107 id. 17; *McHany* v. *Schenk*, 88 id. 357; 2 Freeman on Ex. 309; *Morgan* v. *Evans*, 72 Ill. 586; *Prather* v. *Hill*, 36 id. 402; *Jackson* v. *Spink*, 59 id. 404; *Durham* v. *Heaton*, 28 id. 264).

The appellant in this case claims title through the deed from Ladd to Thurlow and the deed from Thurlow to himself. His claim of title is, therefore, through and under the judgment debtor. The appellee's claim of title is through the sheriff's sale made under the judgment against Ladd, which judgment was a lien upon the lots, before Ladd conveyed to Thurlow. We are of the opinion, that the sheriff's sale was valid and passed the title of Ladd, the judgment debtor, to Charles B. Hosmer, the purchaser at the sheriff's sale; and, therefore, whatever title passed from Ladd to Thurlow was cut off by the sheriff's sale.

*Fourth*—The appellee assigns cross-errors. The main error complained of by the appellee is, that the court below found the title to five-eighths of the property to be in appellee and to three-eighths to be in appellant. Appellee insists that she should have been declared by the

decree of the court below to be the owner of the whole of the lots, instead of an undivided five-eighths thereof. Whether this contention is sound or not depends upon the construction to be given to the quit-claim deed, executed by Charles B. Hosmer to Edward D. Hosmer on March 1, 1888, and the quit-claim deed, executed by Edward D. Hosmer to the appellee, Emma J. Glos, on June 8, 1891.

The proof shows conclusively, that Charles B. Hosmer and his son, Edward D. Hosmer, were partners, and that Charles B. Hosmer held an undivided one-half of the title to the lots in trust for his son, Edward D. Hosmer. By the quit-claim deed, dated March 1, 1888, Charles B. Hosmer conveyed to Edward D. Hosmer "all interest in the following described real estate, to-wit, the equal undivided one-half of lots 2 to 31 inclusive, etc., * * * lots 1 to 3 inclusive and 15 to 18 inclusive in block 5 of Merrill Ladd's addition to Evanston; lot 14 in block 1 in Iglehart's addition to Evanston." It is evident, that the words "an equal undivided one-half" qualify and apply to the lots here in controversy, as well as to the other lots named in the deed. The description of the lots here in controversy is not preceded by a period, but by a comma, showing that the words, "undivided one-half thereof," were intended to apply to all the lots named in the deed. Therefore, Edward D. Hosmer obtained title from his father to an undivided one-half of the lots in question; and, under the will of his father, he obtained title to an undivided one-eighth thereof, making his interest an undivided five-eighths, which he conveyed to the appellee by the deed to her of June 8, 1891. Before the latter deed was made, to-wit, on February 10, 1891, an inventory was filed in the probate court of Cook county in the matter of the estate of Charles B. Hosmer, which described an undivided one-half of these lots, as belonging to the estate of Charles B. Hosmer. The proceedings in the estate of Charles B. Hosmer, including this inventory, were in the line of appellee's chain of title; and she

thereby was affected with constructive notice of the fact, that the estate of Charles B. Hosmer owned an undivided one-half of these lots. But the proof shows that, when the appellee obtained her deed from Edward D. Hosmer, her husband, Jacob Glos, acted as her agent. Edward D. Hosmer swears, that he told Jacob Glos, that he owned only an undivided five-eighths of the property, having acquired one-half from his father by deed, and one-eighth through his father's will. In this way appellee was not only chargeable with constructive notice, but also received actual notice, that Edward D. Hosmer only owned five-eighths of the property. We are, therefore, of the opinion that the court below correctly held, that the appellee was the owner of five-eighths of the property, and not of the whole of the same.

We do not deem it necessary to discuss the evidence in regard to possession. It is sufficient to say, that the evidence does not show any legal possession of these lots by Ladd or Thurlow prior to August 27, 1890. At that date appellant took possession, but he had been in possession less than seven years, when the original petition was filed herein on December 31, 1895. Appellant, therefore, had no possession, which could be set up as a bar to the title of the appellee under the sheriff's deed.

So far as the question of accounting is concerned, no accounting was asked for by the appellant in his pleadings. No objection was made to the master's report, because it did not go into an accounting with reference to the subject of rents and profits collected, and improvements made, which matters are more properly before the court for consideration in a partition proceeding. Appellant, in offering certain testimony upon these subjects before the master, expressly stated that he made the offer for the purpose of showing his good faith, and for the purpose of showing alleged *laches* on the part of the appellee. The evidence appears to have been admitted for this purpose alone, and not with any view of laying

the foundation for an accounting. We are, therefore, of the opinion that the court below committed no error in not ordering an accounting in the decree entered by it.

No point is made in appellant's original brief, that the decree of the court below was not correct in its disposition of the question of taxes and of the question of costs; and, therefore, under rule 15, such point cannot be presented in the reply brief.

The decree of the circuit court is affirmed.

*Decree affirmed.*